THE ILLINOIS POWER AND LIGHT CORPORATION, Appellant,
*vs.* ALBERTA I. PARKS *et al.* Appellees.

*Opinion filed April 23, 1926—Rehearing denied October 19, 1926.*

1. EMINENT DOMAIN—*what damages are to be determined by jury in suit to condemn for right of way for electric power line—evidence.* In a suit by a power company to condemn a strip of land over which to suspend an electric transmission line the jury must determine the fair cash market value of the land actually taken for construction of towers and the depreciation in the fair cash market value of the remainder of the strip, and also damages, if any are shown, to the tract of land outside of said strip; and the evidence of values and damages should be presented to the jury as clearly and concisely as possible.

2. SAME—*meaning of term "market value."* The term "market value," as applied to condemnation proceedings, means the highest price property will bring for the best use to which it is adapted.

3. SAME—*what land is not taken in suit to condemn for right of way for power line—damages.* In a suit by a power company to condemn a strip of land over which to suspend an electric power transmission line, the strip so condemned, except that portion actually used for construction of supporting towers, is land not taken and may be used by the land owner, subject to the superior right of the power company to use it in maintaining and patrolling its line; but the owner is entitled to damages, measured by the depreciation in value because of such use.

4. SAME—*property owner must prove damage to land adjoining that over which power line is suspended.* In condemning a strip of land over which to suspend an electric power transmission line the property owner has the burden of proving damages to land outside of said strip.

5. SAME—*what determines right to recovery of damages for injury to adjoining property.* To entitle a property owner to damages for alleged injury to property not taken by the petitioner, but adjoining that sought to be condemned, it must appear that there has been some direct physical disturbance of a right, either public or private, which said owner enjoys in connection with his property and which gives to it an additional value and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.

6. SAME—*value is determined by adaptability to present use or use in immediate future.* The value of land involved in a condemnation proceeding may be based on the most profitable use for which it is available at the time of filing the petition, but in determining the value of the property for a use to which it is adaptable but has never been applied the availability for future uses must be such as enter into and affect the market value, and regard must be had to the existing business or wants of the community or such as may be reasonably expected in the immediate future.

7. SAME—*verdict of the jury must be based on evidence.* The fact that the jury views the premises does not obviate the necessity of evidence or authorize the jury to fix the compensation and damages without evidence or contrary to it, and where the evidence is not satisfactory and it appears from the verdict that it was based on the individual knowledge and judgment of the jurors, and not upon the proof, it will be set aside.

8. DEEDS—*when deed does not create easement running with the land.* In a deed of land to a public utility in which the grantee permits the grantors, "at their own risk, to use the said property hereby conveyed for their own purposes, without payment of rent," and for such time, only, as the use by the grantors does not interfere with any use to be made of the premises by the grantee, its successors or assigns, there is no reservation running with the land that will pass to the heirs or assigns of the grantors.

APPEAL from the Circuit Court of Hancock county; the Hon. WALTER C. FRANK, Judge, presiding.

HERBERT HAASE, BURTON & HAMILTON, and HARTZELL, CAVANAGH & MARTIN, for appellant.

SCOFIELD & BELL, and WILLIAMS & WILLIAMS, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

On January 15, 1925, the appellant, the Illinois Power and Light Corporation, pursuant to an order of the Illinois Commerce Commission authorizing appellant to construct a high-tension electric transmission line from a point near the east end of the Keokuk dam in the Mississippi river, at Hamilton, Illinois, to the cities of Monmouth and Gales-

burg, filed its petition in the circuit court of Hancock county for condemnation of a tower site upon which to locate one supporting tower, also an easement for right of way purposes three rods wide and approximately 670 feet long over certain lands owned by Alberta I. Parks, and a like easement 50 feet in length over a parcel of land of that width belonging to her son, Samuel P. Parks, for the construction, maintenance, operation and repair of such tower and transmission line. Mrs. Parks and Samuel P. Parks filed separate cross-petitions, alleging that they were the owners of the two tracts of land of which the land sought to be taken was a part; that the location of the three-rod strip as proposed would so divide the premises as to destroy the use and market value thereof for the building of summer residences thereon, to which use the property facing the Mississippi river, and over which it was planned to construct the transmission line, was most adaptable at the time of the filing of the petition to condemn. The cross-petitions prayed that damages to the balance of the property adjacent to the three-rod strip be determined and allowed. A trial was had before a jury that viewed the premises, and a verdict was returned, which was referred back to the jury by the court for correction. As corrected the verdict fixed the compensation to Mrs. Parks for the tower site located on the three-rod strip at $250, as damages for the use of the balance of the three-rod strip for right of way purposes at $1625, and for damages to property adjacent to such right of way at $1500. The compensation to Samuel P. Parks was fixed at $225 as damages for that part of the three-rod strip to be used as right of way. Motion for a new trial was overruled and judgment was entered upon the verdict, authorizing the petitioner to enter upon the lands described in the petition upon payment of all the costs of suit and the total compensation and damages awarded by the jury within forty days. From that judgment the petitioner has prosecuted this appeal.

The Parks tract of land consists of approximately eleven acres. It is located in the north part of the city of Hamilton and about a half mile above the Keokuk dam in the Mississippi river. The tract is in the shape of an "L," and its greatest length is from east to west, along the north side of Cooper street. The greatest width of the tract is at its west end, and it is across this portion of the land from north to south, a distance of about 720 feet, that the transmission line right of way is sought. The west part of the Parks tract, with land to the north of it and a narrow strip west of it, both owned by the Mississippi River Power Company, forms a neck of land or peninsula, bounded on the west by the Mississippi river and on the north and east by Cheney creek. The Parks tract occupies the south half of this so-called peninsula. The Mississippi river at this point has been widened materially and the level of the water raised by the construction of the Keokuk dam. That portion of the river just above the dam is called Cooper (or Keokuk) lake. Title to the narrow strip along the entire west side of the Parks tract was obtained by the Mississippi River Power Company in June, 1914. The deed thereto was executed by Alberta I. Parks and her husband, and by her parents, Peter and Mary Egbers. Two other transmission lines, with wires or conductors on wood poles, are constructed and in operation upon this narrow strip of property lying along the Mississippi river and between the Parks property and the river. Each of these lines, one belonging to the Central Illinois Public Service Company and the other to the Mississippi River Power Company, extends further north over the land forming the north end of the peninsula and which belongs to the latter company. Upon the west end of the Parks property, approximately 150 feet north of Cooper street and 40 or 50 feet east of the proposed right of way strip, is an eight or nine-room brick and frame dwelling, with basement, which was built several years ago. Mrs. Parks, the owner of the

dwelling, resides in St. Louis, Missouri, and her son in Dallas, Texas. For the last three or four years the residence just mentioned has been occupied by Mrs. Parks during the summer months and at other times it was vacant. The east part of the Parks tract is rented to a tenant for farming purposes. South of the residence is a small log cottage facing on Cooper street, and the west half of the cottage is located within the proposed three-rod right of way strip. The cottage has been built about five years and is occupied by renters only during the summer season. The west end of the Parks tract, from its south boundary at Cooper street, rises in height toward the north line of the property, forming a low bluff along the east side of the Mississippi river. From this part of the property it is possible to see up and down the river for several miles as well as across the river to the city of Keokuk. Immediately south of the Parks property there has been some development along the river in the way of summer cottages, bath houses and boat houses being constructed. Some distance north, and across Cheney creek, the Hancock County Automobile Club has buildings and grounds. All of the eleven-acre tract is the property of Mrs. Parks, except a small parcel therein 50 feet north and south by 136 feet east and west, which is located 262 feet north of Cooper street and faces or borders on the narrow strip belonging to the Mississippi River Power Company, which is the west boundary line of the whole Parks tract. The last parcel of land since 1917 has belonged to Samuel P. Parks, the son of Mrs. Parks. The entire eleven acres were formerly the property of Peter Egbers, deceased, he having acquired title thereto about 1904. The tract has never been platted or subdivided and the tillable part of it appears to have been used for farming and truck gardening purposes. The only summer cottage on the land is the one facing south, on Cooper street, and no part of the eleven-acre tract has ever been sold for any purpose except the small unimproved

parcel to which Samuel P. Parks has title. The three-rod strip sought to be condemned for right of way purposes extends from a point a few feet east of the Mississippi river, at Cooper street, in a northerly direction a distance of approximately 720 feet, across the west end of the entire Parks tract. The right of way crosses over the 50-foot lot of Samuel P. Parks at about the middle thereof. At the north boundary line of the eleven-acre tract the three-rod strip is over 100 feet east of the river. Thus, west of the right of way strip is a triangular piece of ground extending from north to south across the entire Parks tract. Upon the three-rod strip there are some thirty-five or forty trees, varying in size and height. Two or three of the larger trees are in close proximity to the dwelling mentioned heretofore and afforded it some shade.

The transmission line to be constructed over the three-rod strip is a two-circuit line, having three wires to each circuit, carrying 66,000 volts of electric energy, and is to be suspended from steel towers. One galvanized steel tower is to be erected in the center of the strip at a point on Mrs. Parks' property about 554 feet north of its south boundary line and 166 feet south of the north boundary line. The tower is to have four legs, each of which is to be securely anchored in the ground with concrete and strengthened from its base to the top with horizontal and diagonal steel braces. It will be 74 feet high, tapering from the base to the top, and will carry three cross-arms. Two of these are 14 feet in length and the other is 16 feet long and at a height above the ground of 54 feet, 62 feet and 70 feet, respectively. To either end of each cross-arm a seven-strand naked wire or conductor will be attached by means of suspended insulators. The cable or wire suspended from each end of the lowest cross-arm will be 50 feet from the ground at the tower, and at the lowest point of sag between the tower on appellees' land and a tower to be erected a short distance south of Cooper street

it will be 35 feet from the ground.   It appears that for safety in operation the lowest wires should have 10 feet clearance above any object existing or constructed upon the ground.   The base or foundation of the tower beneath the surface of the ground is about 26 feet square, and at the surface it occupies about 18¼ feet square, or .0076 of an acre.   The total area of the three-rod strip is approximately .82 of an acre.   The area of the strip over Samuel P. Parks' lot is .176 of an acre and over Mrs. Parks' land .644 of an acre.   The strip over which the easement is sought will not be fenced, no signal circuit or telephone line will be installed and no highway maintained thereon by appellant.   The tower site will be under the exclusive control of appellant, and the strip will be subject to appellant's use for the construction, operation, repair and inspection of the line.   Patrolling of the transmission line will be done about once a week by the utility company's employees, on foot.   Subject to such use by appellant appellees will have the right to use and control all of the strip except the tower site.

Several errors are assigned by appellant, among which are, that the damages assessed were excessive and contrary to the weight of the evidence, that the findings of the jury were inconsistent, and that the court erred in giving instructions to the jury.

The fact to be determined by the jury was the fair cash market value of the land taken and the depreciation in the fair cash market value of the three-rod strip which would result from the construction and operation of the proposed transmission line; also damages to the tract of land outside the three-rod strip.   Appellant first introduced the testimony of witnesses who testified as to the value of the fee of the entire three-rod strip.   These valuations varied from $150 to $600.   One of appellant's witnesses testified that the portion of the three-rod strip across Samuel P. Parks' lot, which is about one-fourteenth of the length of

the strip across the entire Parks tract, was worth $25 or $30. No testimony was offered by appellant as to the fair market value of the site upon which the tower was to be erected, nor as to the depreciation in the fair market value of the two separate parts of the strip which would result from the right of appellant to use it jointly with appellees. Appellees then introduced the testimony of witnesses on the question of value and damages. The value of the fee of the entire strip given by these witnesses ranged from $2200 to $6000, and with the transmission line constructed thereon the three-rod strip was valued at not to exceed $100. The value of the entire Parks tract, as testified to by appellees' witnesses, varied from $7000 to $15,000, and with the high-tension line in operation thereon the value of the whole tract ranged from $1000 to $6500. Four of the witnesses also stated that the Samuel P. Parks lot was worth about $500 and after the construction of the line its value would be from $10 to $50. In rebuttal, appellant presented the testimony of fourteen witnesses who placed a value upon the entire eleven-acre tract ranging from $3000 to $5825. The testimony of these witnesses tended to show the value of the tract after the construction of the transmission line would be from $2500 to $5325. At least five of appellant's witnesses, in rebuttal, testified the balance of the land outside of the three-rod strip would be damaged from $300 to $650.

It will be seen from the manner in which the testimony was presented that it was left to the jury to make their own calculations and deductions therefrom as to values and damages to the respective properties. No definite sum was given to the jury by either appellant or appellees as to the value of the tower site, nor as to the depreciation in the value of the respective portions of the three-rod strip belonging to each of appellees and caused by the construction and operation of the transmission line. The necessary evi-

dence of values and damages in a proceeding of this nature should be presented to the jury as clearly and concisely as possible, so as to make the jurors' duty plain and unmistakable. Mrs. Parks was entitled to compensation for the fair cash market value of the parcel of ground, approximately 18¼ feet square, to be occupied by the tower. (*City of Chicago* v. *Witt,* 289 Ill. 520.) The term "market value," as applied to condemnation proceedings, means the highest price property will bring for the best use to which it is adapted. (*Crystal Lake Park District* v. *Consumers Co.* 313 Ill. 395.) The three-rod strip, exclusive of the tower site, over which the transmission line wires are to be strung or suspended, was land not taken by appellant. (*Illinois Telegraph News Co.* v. *Meine,* 242 Ill. 568.) Subject to appellant's right to maintain and patrol its line appellees have the right to use the entire strip except the tower site. Appellees are entitled to compensation for damages caused to the strip outside of the tower site, and the correct measure of damages is the depreciation in value of that part of the strip caused by its subjection to the appellant's superior right to use it for the purposes mentioned in the petition for condemnation. (*St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 Ill. 508; *Illinois Telegraph News Co.* v. *Meine, supra.*) As to whether or not land belonging to appellees outside the three-rod strip would be damaged, the burden of proving such damage was upon appellees. (*Stockton* v. *City of Chicago,* 136 Ill. 434.) The rule applicable to warrant a recovery for such damages is, that it must appear there has been some direct physical disturbance of a right, either public or private, which a person enjoys in connection with his property and which gives to it an additional value and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. (*Otis Elevator Co.* v. *City of Chicago,* 263 Ill. 419.) It seems unnecessary to discuss this question further, as it ap-

pears counsel for appellant recognized that there would be some damage to the Parks tract outside the three-rod strip. At least five of its witnesses testified to damages to the property outside the right of way strip, ranging from $300 to $650.

A great many objections were interposed by counsel on either side questioning the competency of the respective witnesses testifying in the case as to value of and damages to the property. The opinions of the witnesses for appellees as to the value of the three-rod strip without the line upon it and with the line constructed thereon, as well as their opinions of the value of the whole Parks tract with and without the line thereon, were evidently based upon the scenic location and subdivision possibilities of that portion of the tract for the use of summer cottages or homes. The conclusion is warranted from the wide range in the testimony as to the value of the Parks property that appellant's witnesses did not place their valuations upon a possibility of use for such purposes, though one or two witnesses said it might be so used if anyone wanted it for such use. Appellees were entitled to have their land valued on the basis of the most profitable use it was available for at the time the petition was filed. This availability, however, does not refer to a future possibility but to a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value. (*City of Chicago* v. *Lord,* 276 Ill. 571.) In fixing values on property in condemnation cases for uses to which it is adaptable but has never been applied its availability for future uses must be such as enters into and affects its market value, and regard must be had to the existing business or wants of the community or such as may be reasonably expected in the immediate future. (*Forest Preserve District* v. *Kean,* 298 Ill. 37.) It seems from the proof that the west end of the property here involved is perhaps adaptable to the purpose made use of as a basis of value by appellees, pro-

vided there is a present or immediate prospective demand
for it for that purpose.   About the time of the construc-
tion of the Keokuk dam there was some activity in real es-
tate in this particular vicinity, but for several years past
very few sales, if any, of near by property have been
made.   This property has been owned by Mrs. Parks' de-
ceased father and herself over a period of twenty years,
during which time it has never been subdivided or platted
or any part of it sold for summer home purposes.   The
parcel of the tract here involved and belonging to Samuel
P. Parks is still vacant, and two other transmission lines
on wood poles have extended along the river-front west
of the entire Parks tract for some time.   The only sum-
mer cottage ever built upon the property is a log house
of Mrs. Parks situated near the east boundary of the strip,
facing south on Cooper street.   From the proof it seems
there has been little demand, if any, for this property for
the construction thereon of summer homes.

The compensation awarded Mrs. Parks for the tower
site, being about 18¼ feet square, was $250.   There is no
proof in the record showing its fair market value.   Only the
value of the whole strip was stated, and its greatest worth
given by any witness was $6000.   If the award made by
the jury for the small tower site area is used as a basis of
valuation the entire three-rod strip would be worth over
$32,000.   The jury gave Samuel P. Parks $225 damages
for the use of the three-rod strip, 50 feet in length, across
his parcel of land, and gave to Mrs. Parks $1625 damages
for the use of said strip (excepting therefrom the tower
site) across the remainder of the land, a distance of about
670 feet.   The lands were similar in character and the
width of the easement the same, but the distance across
Mrs. Parks' property was at least thirteen times the length
of Samuel P. Parks' property.   If the compensation to
Samuel P. Parks is used as a basis of calculation the
amount awarded Mrs. Parks is far too small; if the award

to Mrs. Parks is used as a basis the compensation to her son should have been about $125, or one-thirteenth of the award made to her. As damages to property outside the three-rod strip, $1500 was given to Mrs. Parks and no damages were awarded to Samuel P. Parks to the remainder of his lot.

It seems to us from this record that the manner in which the testimony was presented was calculated to confuse the jury as to the questions they were to decide. The questions the jury were required to decide were the value of the land taken for the tower, the difference in the market value of the three-rod strip caused by taking the easement for right of way for the transmission line, and the damage caused the land outside the three-rod strip by the construction of the transmission line over the three-rod strip. We do not find any proof as to the market value of the tower site, which the jury found was $250. Appellant, in chief, introduced several witnesses, but all of them except one testified to the value of the fee in the three-rod strip and only one testified to its value subject to the easement. The jury awarded Mrs. Parks $1625 for the easement over her land,—a distance of nearly 700 feet. Her son was awarded $225 for the easement over his land,—a distance of 50 feet. Mrs. Parks was awarded $1500 damages to her land outside the three-rod strip, but her son was awarded no damages to his land outside the three-rod strip. That the jury were confused appears from the verdict as first returned. They awarded Mrs. Parks $1500 damages to land outside the three-rod strip and also found there were no damages to her property outside the strip. They awarded Samuel P. Parks $225 for the easement over his lot and $225 for damages to the remainder of the lot. The errors were discovered by the court and the jury sent back to their room to further consider their verdict, after which they returned the verdict upon which the judgment was rendered. We

are not satisfied to approve the verdict and judgment in the present state of the record. The award and verdict should be based upon the proof and not upon the individual knowledge and judgment of the jurors. True, the jury viewed the premises, and that view was in the nature of evidence, but it did not obviate the necessity of evidence or authorize the jury to fix the compensation and damages without evidence or contrary to it. *Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372; *Mauvaisterre Drainage District* v. *Wabash Railway Co.* 299 id. 299.

Complaint is made of some instructions, but we do not deem it important to discuss them as the supposed errors are not very material and are not likely to occur upon a re-trial.

There was offered in evidence during the trial the deed executed in June, 1914, by Peter Egbers and wife and Mrs. Parks and her husband, conveying to the Mississippi River Power Company the narrow piece of land extending along the entire west side of the Parks tract. Contained therein was the following provision: "The grantee shall permit the grantors at their own risk to use the said property hereby conveyed for their own purposes, without payment of rent so long as the said uses by the grantors do not interfere with any present or future uses which the grantee, its successors, assigns or grantees, may desire to make of the premises conveyed." The court told the jury in an instruction: "The court instructs the jury that under the deed in evidence from Mr. and Mrs. Egbers and Mr. and Mrs. Parks to the Mississippi River Power Company, the reservations in favor of the grantors are appurtenant to and run with the land, and would pass to and in favor of the grantees of Alberta I. Parks, or her heirs or devisees in case of her death." We think the provision in the deed plainly shows there was no intention to create an easement running with the land. The reservation made in the deed by the grantors was "for their own purposes" for

such time, only, as the use by the grantors did not interfere with any use to be made of the premises by the grantee, its successors or assigns. There was no reservation running with the land that would pass to the grantees, heirs or devisees of Mrs. Parks. Two or more witnesses testified the Parks land would be of less value if the rights of access to the river did not exist. The instruction should not have been given.

From our examination of the entire record we are of opinion the cause should be submitted to another jury. The judgment of the circuit court is therefore reversed and the cause remanded.    *Reversed and remanded.*