STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Respondent,

v.

John F. STEINLAGE et al., Exceptions of Tyvern Realty Company et al., Defendants-Appellants.

No. 37005.

Missouri Court of Appeals, St. Louis District, Division Two.

Nov. 2, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Dec. 20, 1976.

Application to Transfer Denied Feb. 14, 1977.

Richard M. Stout and Rick M. Stout, Kirkwood, for defendants-appellants.

Bruce A. Ring, Chief Counsel, Jefferson, Richard E. Baker, Asst. Counsel, Kirkwood, for plaintiff-respondent.

McMILLIAN, Presiding Judge.

Defendant appeals from a jury verdict. In 1968, the State Highway Commission condemned for highway purposes, a portion of defendant's land situated at the intersection of Big Bend Boulevard and Kirkwood Road in St. Louis County. Appointed commissioners awarded defendant $19,000.00 damages. Trial before a jury of exceptions resulted in a judgment entered January 24, 1975, awarding defendant damages of $13,-500 and ordering defendant to refund to relator $5,500 together with interest. We reverse and remand for a new trial.

On appeal, defendant claims error in the admission of certain testimony of Tom McReynolds, an expert witness for the state, and in comments by the state's attorney during closing argument.

Involved here is a "U" shaped parcel of land located on the northeast corner of Kirkwood Road and Big Bend Boulevard. The total area of this parcel, before any of it was taken, was 21,767 square feet. The shaded portion of the drawing below, hereinafter referred to as the Cook property, did not belong to appellant. Prior to the June 20, 1968, taking, three buildings were situated on the defendant's property. In addition, there was a building on the Cook property. All three of defendant's buildings were forty to fifty years old but at the time of the taking all were rented.

[See Illustration on next page]

**New Road**

**Cook Property**

**"Landlocked" parcel**
(as understood from transcript and briefs)

As of June 20, 1968, two thousand five hundred eighty-four (2,584) square feet of the property was taken for the new roadway. One of defendant's buildings, then rented to Hampton Cleaners for $175 per month, was demolished because the new road ran through the middle of it. Also, during construction of the road, a temporary easement over an additional 2,459 square feet of defendant's property was taken. Completion of the new road left a triangular-shaped portion of defendant's

land without vehicular access. The triangle was bounded by the building on the Cook property, one of defendant's remaining buildings and the newly constructed curbline. It is confusion over valuation of this triangular shaped piece of property that prompts this appeal.

Four experts testified as to their appraisals of the property. The landowner had one expert witness, Ken Hawkinson. He testified that the highest and best use of defendant's property would be a modern strip shopping center with excellent parking space. Development of such a shopping center would, however, require removal of the existing structures on defendant's land. Acting on the basis of a study of comparable sales, the specifics of which Hawkinson refused to reveal because of confidentiality considerations, he valued the entire 21,767 square feet of property at $4 per square foot. Early portions of his testimony suggest that this $4 per square foot figure represented only the underlying value of the land itself disregarding the highest and best use of it. Certain responses of the witness during cross-examination, however, create confusion as to whether the figure actually reflected the land value in light of the potential for development as a strip shopping center. The existing structures were valued on an income capitalization basis. Mr. Hawkinson noted that the buildings were quite old but that they were generating some rental income and he opined that the entire 2,459 square feet, once taken by the state as a temporary easement, had been landlocked by the road construction and that the entire area should be included for purposes of computing the loss. The possibility of the landowner maintaining the building bordering on one side of the property, he characterized as a business judgment not subject to change by the state. The loss to the landowner including the property and building was set at $24,420.00.

The principal expert witness for the state was Tom McReynolds. Based on a study of fourteen comparable sales, five of which the witness detailed, he set the land value prior to the taking at $2 per square foot on Big Bend Boulevard and $3 per square foot on Kirkwood Road. The buildings were valued on a cost less depreciation basis. As did the other experts, McReynolds noted that the highest and best use of the entire parcel was commercial. Unlike the other experts, however, McReynolds then testified, over the opposing attorney's continuing objection, that the testimony was speculative, that the highest and best use and proper development of the property required the destruction of existing structures and the combination of defendant's property with the Cook property. If the Cook property was unavailable, he noted that the defendant's existing buildings should still be torn down to build a larger retail facility. McReynolds further testified, over continuing objection that while the landlocked parcel of land—the area of which he set at 1,188 square feet, had no use immediately after the taking, it was unreasonable to assume that this condition would persist forever. Based on the age and condition of the existing buildings, trends of commercial development in the area and the business need for more modern commercial buildings, McReynolds stated that it would be reasonable to assume that the landlocked condition and diminished value of the land would exist for only three years. Applying a three-year diversion factor for a 7% investment return, McReynolds discounted the $3 per square foot land value to $2.45 per square foot for the 1,188 square feet. Compensation for the 1,188 square feet was thus set at 55 cents per square foot. Incorporating this figure into his computations, he set the overall loss to the landowner at $10,800. McReynolds' use of this diversion factor approach, which defendant labels as wholly speculative, yields the principal complaint in this appeal.

During cross-examination, defendant's counsel asked McReynolds if he had ". . . any indication at all that that [combination with the Cook property] would be possible, factual?" The witness responded: "Well, sure. Just go by and look at it today." The response apparently was a reference to the fact that sometime between June 20,

1968, the day of the taking, and January of 1975, the time of the trial, the Cook property had been acquired and the defendant's buildings removed. Defendant's attorney objected, moved to strike the answer and moved for a mistrial. The trial judge sustained the objection and instructed the jury to disregard the response but refused to grant a mistrial. This refusal to grant a mistrial prompts one of the appellate contentions. McReynolds then admitted that as of June 20, 1968, he had no evidence that acquisition of the Cook property was a factual possibility. In response to a question by the trial judge McReynolds insisted, despite his earlier computations, that his $10,800 estimate of loss was based on the condition of the property as of the date of the taking apart from any possible combination of the parcels. Defense counsel's motion for a mistrial, because of the witness' injection of the false issue of combination of the properties, was overruled. This action generated another appellate contention.

The remaining two state's experts, Harvey Hyams and Harry G. Herring, valued the entire parcel at $3 per square foot and applied a cost less depreciation formula to the value of the structures. The computations of damages by both experts dealt solely with the 2,584 square feet of property physically taken for construction of the new road. The amount of loss was set by these two experts at $11,350 and $10,850 respectively. The $500 difference in the result appears simply to be the product of rounding off certain of the sums included in their computations. Defendant makes no objection to the testimony of these experts.

During closing argument, the state's attorney suggested that the landlocked parcel retained some potential use for open storage or for landscaping since only vehicular and not pedestrian access was impossible. In addition, the attorney suggested that the existing structures had had problems due to the fact they were so far toward the front *line and* near the right-of-way line. The trial court's overruling of objections to both of these comments as being unsupported by

the evidence formed the basis for the final appellate contention.

■ Defendant's principal appellate complaint centers on the testimony of McReynolds, and specifically on the prognostication of the witness that the landlocked condition of the triangular parcel of land would persist for only three years. We agree with the defendant that this crucial portion of McReynold's testimony was improperly admitted into evidence because the three-year prediction was wholly speculative.

■ In condemnation cases, damages are properly measured as of the date of the taking, *Western Robidoux P & L Co. v. Missouri Highway Comm.*, 498 S.W.2d 745, 748 (Mo.1973) and see also cases collected in Missouri Digest, Eminent Domain at 124. The approach, however, is not a wholly static one. The notion of highest and best use, and thus some reflection of the potential future development of the property, is provided for in the approved damages instruction for such cases. Thus MAI–Civil 16.02 provides that:

> "In determining fair market value you should take into consideration all the uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the near future."

Estimates of damages should be directed to establishing ". . . the present value for the adaptable use . . ." *State v. Schutte Investment Co.*, 334 S.W.2d 241, 248 (Mo.1960); *In re Armory Site in Kansas City*, 282 S.W.2d 464, 472 (Mo.1955). It should be noted, however, that the existence of a relevant adaptable use ". . . 'does not refer to a future possibility but to a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value' . . ." *Shell Pipe Line Corp. v. Bruns*, 239 S.W.2d 546, 549 (Mo.App.1951) quoting *Illinois Power & Light Co. v. Parks*, 322 Ill. 313, 153 N.E. 483, 487 (1926). In the present case, McReynolds presented no evidence that removal of the existing struc-

tures and acquisition of the Cook property could be anticipated with any reasonable degree of certainty within the three-year period. On cross-examination, McReynolds admitted that as of the date of the taking he had no factual basis for his three-year projection. He testified as to business trends and as to his own opinion of the most rational business development of the entire parcel of land. As noted by defendant's expert witness, however, the landowner retained the right to leave the existing structures on the "untaken" portion of his land. To allow damages to be computed by the formula suggested by McReynolds and to thereby award defendant only 55 cents per square foot for the landlocked parcel would compel the landowner, in order to avoid loss, to remove all of the existing structures within three years.

On appeal, defendant has directed our attention to several cases in which a landowner was prevented from introducing evidence of proposed condition changes, wherein the courts found that the evidence would provide only a speculative basis for aggrandizement of damages, see, e. g., *In re Armory Site in Kansas City,* supra at 470–71; *State ex rel. State Highway Comm. v. Graeler,* 527 S.W.2d 421 (Mo.App.1975). A similar emphasis on determining just compensation prompts us to exclude speculation by the state directed to the diminution of damages.

■ In response to defendant's complaints, the state presents several cases espousing the abandonment of technical rules of evidence, such as hearsay and the best evidence rule, in relation to expert testimony, see, e. g., *State v. Barron,* 400 S.W.2d 33, 37–38 (Mo.1966) and *State ex rel. State Highway Comm. v. Carlson,* 463 S.W.2d 74, 76–8 (Mo.App.1970). We feel, however, that the restriction on speculative testimony by expert witnesses is not a technical rule of evidence but rather a needed protection against evidence of improper measures of damages being presented to the jury. The trial court, therefore, committed error in overruling defendant's objection to the speculative testimony of McReynolds.

■ The entire issue of the admission of McReynolds' speculative testimony is muddled by the fact that in response to a question by the trial judge, McReynolds denied incorporation of the three-year prediction into his $10,800 damage estimate. First, we find the denial unconvincing in light of McReynolds' earlier testimony specifically referring to the three-year prediction and the diversion factor in his damage calculations. If, however, McReynolds' estimate was not based on the diversion factor, we agree with the defendant that the trial judge should have acted to block the presentation to the jury of this inadmissible evidence, *In re Armory Site in Kansas City,* supra, at 472. The potential significant impact on a non-expert jury of expert testimony in the complex field of land appraisal seems to warrant extreme caution in the admission of such testimony.

■ The case must be retried because of the improper admission of McReynolds' prediction that the landlocked condition and diminished value of the small parcel would persist for only three years. For purposes of retrial, we note summarily the other contentions of the defendant—defendant's complaints as to McReynolds' response on cross-examination making reference to the condition of the property as of the date of the trial. It appears the trial judge acted properly in sustaining the objection and instructing the jury to disregard the testimony. The refusal to invoke the drastic remedy of declaring a mistrial seems to have been a proper exercise of the trial judge's discretion. There was no other evidence introduced which would alert the jury to the changed circumstances as of the date of the trial. Any prejudicial impact on the jury, therefore, was probably imaginary.

■ Defendant's final complaint relates to comments by the state's attorney during closing argument. We feel that the comments were within the reasonable scope of the evidence and inferences from the evidence as evaluated by the trial judge, *Schmid v. Langenberg,* 526 S.W.2d 940, 946 (Mo.App.1976).

Also, for the purposes of retrial, we make one final comment. We find it curious that in a case involving the relatively objective issue of the measurement and valuation of land, the parties are unable to provide us with an understandable map of the subject property or even agree on the square footage of the landlocked parcel of land. The great variance between McReynolds' $10,800 damage estimate and Hawkinson's $24,420 estimate seems largely to stem from McReynolds' description of the landlocked parcel as 1,188 square feet and Hawkinson's description of it as 2,459 square feet.

The judgment of the trial court is hereby reversed and the cause remanded for a new trial.

STEWART and RENDLEN, JJ., concur.