STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Successor to State Highway Commission of Missouri, Plaintiff/Appellant,

v.

John Forrest JOHNSON, et al. Exceptions of Don Hall, Inc. A Missouri Corporation, Defendant/Respondent.

No. WD 33960.

Missouri Court of Appeals, Western District.

Sept. 20, 1983.

Bruce A. Ring, Jefferson City, Earl H. Schrader, Jr., James B. Jackson, Kansas City, for plaintiff/appellant.

James O. Turner, St. Joseph, for defendant/respondent.

Before CLARK, P.J., and PRITCHARD and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The Missouri Highway and Transportation Commission (Commission) appeals from a verdict and judgment of $119,500 in favor of Don Hall, Inc. (Hall) in this action filed in January 1972 to condemn land in and adjacent to Mound City. The land was roughly in the shape of a triangle, containing 91 acres, with 3100 feet bordering on Route 59. The taking was of 24½ acres, with 1.39 acres reserved for a drainage easement. Eight acres outside the Mound City limits were taken, the remainder were in the city. After the taking 66½ acres remained, 22 of which were landlocked on the west side of Interstate 29, the balance to the east. Expert witnesses for the Commission valued damages at $24,975 and $25,000. Hall's expert computed damages at $123,500.

The Commission's first and third points claim error in the trial court's denial of its motion to quash the jury panel and move for a mistrial or in the alternative for a change in venue pursuant to Rule 51.04.[1] These points will be addressed together.

1. Rule 51.04 provides in relevant part:

(a) A change of venue may be ordered in any civil action triable by jury for the following causes:

(1) That the inhabitants of the county are prejudiced against the applicant; or

(2) That the opposite party has an undue influence over the inhabitants of the county.

(b) *The application for change of venue must be filed at least thirty days before the trial date or within five days after a trial date is fixed, whichever date is later.*

(c) A copy of the application and a notice of the time when it will be presented to the court must be served on all parties.

(d) The application shall set forth the cause or causes for the change of venue. It need not be verified and may be signed by the party or by an agent or attorney.

(e) The adverse party, within five days after the filing of the application for change of venue, may file a denial of the cause or causes alleged in the application. Such denial may be signed by the party, an agent or attorney, and need not be verified. *If a denial is filed, the*

After the voir dire of the first jury panel, the court struck for cause fourteen of twenty-four members who admitted bias in favor of respondent, but it denied the Commission's motion to strike the entire panel. The motion to quash was based on the ground that everyone on the panel either knew or was related to Don Hall. The venirepersons not struck for cause knew Don Hall but stated their judgment would not be affected by their acquaintance with him.[2] The court summoned twelve additional venirepersons. Respondent's counsel asked the following general questions of this panel: [3]

I think right off I'd like to ask of you folks, how many of you know Don Hall? Everybody.

I'm going to ask one general question so we can move this thing along a little bit. Is there anyone that feels because of your acquaintanceship with Don Hall, that you could not render, as you heard the evidence from the witness stand and exhibits that the Court allows in and instructions from the Court to the jury, feels that you could not render a fair and impartial verdict to Don and to the State Highway Commission, and rule fairly as to what you think the awards should be based on the evidence, and not to be unduly influenced by your acquaintanceship with Don for or against? Anyone that feels you couldn't do that as a juror?

Now, to make sure you understand what I am asking you, here, Don Hall is the defendant. Some of his ground has been taken for the interchange, Interstate 29. There's going to be a lot of money involved in testimony. Both sides have a different version, obviously, or we

*court shall hear evidence and determine the issues.* If they are determined in favor of applicant, or if no denial is filed, a change of venue shall be ordered to some other county convenient to the parties and where the cause or causes do not exist.

\* \* \* \* \* \*

(emphasis added).

2. During the questioning of the first panel consisting of twenty-four members, the prospective jurors (referred to numerically) responded as follows: Number 1 stated he was about a fourth cousin to Don Hall and admitted bias in favor of respondent (struck for cause). Number 2 stated that his son married Don Hall's daughter, but said he did not feel this would affect his judgment (struck for cause). Number 3 stated she knew Don Hall ever since living in Mound City and admitted she would be partial (struck for cause). Number 4 stated she knew Don Hall but could be fair to the parties. Number 5 stated he knew Don Hall for quite a while but that this would not affect him. Number 6 stated he knew Hall and admitted difficulty with his judgment (struck for cause). Number 7 stated he knew Hall a number of years and admitted being partial (struck for cause). Number 8 stated he knew Hall and his family, and admitted being biased (struck for cause). Number 9 stated he knew Hall for twenty years, but that his judgment would not be affected, and that he had never had business dealings with Hall. Number 10 knew Hall for a long time but stated his judgment would not be affected. Number 11 knew Hall since 1960, but his judgment would not be affected. Number 12 knew Hall over twenty-five years, and was afraid she would be more favorable to him (struck for cause). Number 13 knew Hall, but

not that well and had never had business dealings with him. Number 14 stated she had no partiality, although Hall was her sister-in-law's brother. Number 15 knew defendant, but stated she would be fair and give as much consideration to the testimony of both sides. Number 16 knew Hall for several years, but stated she would be fair to both sides. Number 17 knew Hall since growing up with his children, and said his judgment would be affected (struck for cause). Number 18 knew Hall for a number of years, and stated she was afraid this would affect her judgment (struck for cause). Number 19 knew Hall and said she would be more favorable towards him (struck for cause). Number 20 knew Hall for eight to ten years and said this would affect his judgment (struck for cause). Number 21 knew Hall, but stated she would have an open mind and be honest and fair. Number 22 knew defendant and also worked for the State Highway Department (struck for cause). Number 23 knew Hall and said he would be more favorable towards him (struck for cause). Number 24 grew up with Hall and is his cousin (struck for cause).

3. After respondent's counsel posed the general questions to the venire, appellant's counsel questioned only four of twelve jurors individually, to which the following responses were given. Number 1 knew Hall twenty years but would have to hear the case first to draw her own opinion. Number 2 did not know Hall personally, just who he was and by just seeing him. Number 3 knew Hall by his name and face. Number 4 knew Hall twenty-five years or so, was not a neighbor, and would not be affected by his acquaintance with him.

wouldn't be here, and we want a fair and impartial verdict.

Is there anyone who feels, because of acquaintanceship with Don Hall, they could not listen to the evidence and render their verdict based on the evidence and their assessment of the evidence?

I take it, by the fact that no one has raised their hand, you feel you could to all that.

Twelve jurors were then selected from a list of eighteen names compiled from the two panels. The Commission renewed its motion to strike the entire panel. Trial was set for April 1, 1982, five days after the jury had been selected. Two days before trial, appellant filed its motion to quash the jury or in the alternative for a change in venue, claiming Don Hall had undue influence over the inhabitants of the county and members of the jury panel which only became apparent at the actual voir dire of the jury. The Commission offered no additional evidence in support of its motion for a change in venue but instead relied solely on the voir dire testimony.

■ The petition of the Commission for a change in venue was not filed within the applicable time period required by Rule 51.-04(b) (within five days after a trial date has been set or at least within thirty days of the trial date, which date is later). It seeks to excuse the delay, for the reason stated above, the undue influence by respondent over the inhabitants of the county was not discovered until the voir dire of the jury. The Commission cites to *George L. Cousins Contracting Co. v. Acer Realty Co.,* 110 S.W.2d 885 (Mo.App.1937); *Laughlin v. Newman,* 61 S.W.2d 218 (Mo.App.1933); and *Ralston v. Ralston,* 166 S.W.2d 235 (Mo. App.1942), as authority for the proposition that matters of timeliness and improper delay in petitioning for a change of venue upon discovery of grounds for such an application rest within the discretion of the trial court. The cases relied upon by the Commission were all decided under predecessors to the present Supreme Court rules relating to change of venue, all of which did not impose specific time periods for the filing of such petitions, and thus left room for the application of discretion as to their timeliness. In any event change of venue from a county under 51.04 contemplates the motion being filed *prior* to commencement of trial. The waiving of the 5 days after trial *date* or within 30 days of trial *date* limitations need not be reached here—trial had already *begun* thus making any motion for change untimely.

Unlike other venue provisions, Rule 51.04 allows a change of venue only "for cause." The plain language of Rule 51.04(e) mandates that where a change of venue is opposed, "the court shall hear evidence and determine the issues," *i.e.,* whether undue influence exists over the inhabitants of the particular county. Contrary to this plain language, the Commission asserts that a change of venue may be granted under this present rule even in the absence of any evidence, relying upon *Clark v. Atchison, Topeka & Santa Fe R.R. Co.,* 319 Mo. 865, 6 S.W.2d 954 (1928). *Clark* provides no such support since the applicable statute at that time, Section 1361 RSMo.1919, with limited exception *required* an award of change of venue without further evidence upon the filing of a sufficient affidavit.

■ Through use of an untimely motion for a change of venue, the Commission seeks to substitute the remedy for being in a biased county for the relief it cannot obtain against an individual juror panel. The voir dire testimony falls short of proving its claim of undue influence to allow a change of venue or providing sufficient grounds to quash the entire panel. The quashing of a jury panel, while reviewable, is largely a matter within the discretion of the trial judge, who stands in a better position to gauge the effect of the matter claimed to be prejudicial. *Smith v. Aldridge,* 356 S.W.2d 532 (Mo.App.1962). The party challenging the venire of jurors carries the burden of proving the facts on which the challenge is based, and this burden is not met by the mere assertions and conclusory allegations of counsel. *State v. Hutchens,* 604 S.W.2d 26, 29 (Mo.App.1980).

■ While jury responses revealed that everyone on the panel knew Don Hall, counsel failed to prove any facts showing Hall's pressure or influence over panel members, such as employment, business dealings, or even friendship. Counsel failed to ask in what capacity many jurors were acquainted with Don Hall, or whether Hall's activities of farming, real estate or ownership of an airport in any way affected the jurors' ability to render an impartial, unbiased decision in this case. None of the responses elicited by the Commission's counsel reveal any such pressure or influence. *See* note 2 *supra.* The Commission seeks to fill this vacuum with its own "inescapable conclusions" that Don Hall "was either very popular, very powerful, or both," that because the members of the panel knew Don Hall they "would not be quite so honest in their assessment of their own tendencies toward bias" and subject to a "strong current of pressure" from his "well-wishers." Its further unsupported argument that the five-day continuance to trial exacerbated the Commission's chances for a fair trial contradicts his counter-theory of "deepest knowledge and attitude." The record reveals that only those venirepersons who stated they could be impartial were allowed to serve as jurors. Before the five-day continuance, the trial judge sufficiently cautioned them against discussing the case within the community. Before being sworn as jurors, Hall's counsel asked the members whether anything had occurred during the period of five days to influence their judgment, including talking with Don Hall. The response was, "no."

■ At oral argument the Commission called the court's attention to a recent condemnation case, *West Virginia Department of Highways v. Fisher,* 289 S.E.2d 213 (W.Va.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 257, 74 L.Ed.2d 201 (1983), in which the defendant landowner was a physician of forty years who had treated many of the prospective jurors and their families. · The court held that the respect for the reliability of statements communicated by a physician inherent in the physician-patient relationship posed a "serious disadvantage" to the condemnor, warranting a new trial and special care by the trial judge to insure that the prospective jurors were free from bias and prejudice. Unlike *Fisher,* no comparable special relationship was demonstrated between Don Hall and the jury panel. The *Fisher* case specifically declined, as does this court, to adopt a *per se* rule of exclusion based upon mere acquaintance between the prospective jurors and a party or witness in the case. *See United States v. Brown,* 540 F.2d 364, 379 (8th Cir.1976) (absent showing of actual bias, the court properly refused to strike from jury panel citizens of St. Louis in case charging defendant with defrauding the "City of St. Louis and its citizens."); *United States v. Kelton,* 518 F.2d 531, 533 (8th Cir.1975) (absent showing of actual prejudice, the fact that the juror knew defendant's family did not result in denial of trial by fair and impartial jury).

These points are both ruled against the Commission.

## II.

The Commission's point asks for relief under plain error because a juror, under Section 494.190 Revised Statutes of Missouri should have been struck for cause. This statute, as here pertinent, says no person shall be sworn as a juror who "is kin to either party ... within the fourth decree of consanguinity or affinity [,] ...." The following colloquy with a member of the venire, Marilyn Buntz gives rise to this point of error. Buntz was denominated as number 14 in footnote two.

> Mr. Thompson (Commission's lawyer): Have you known Mr. Hall for a number of years?
>
> Venireman Buntz: Some time; he's my sister-in-law's brother.
>
> Mr. Thompson: Would that perhaps—
>
> Venireman Buntz: I don't think so.
>
> Mr. Thompson: —affect your judgment in any way in this matter?
>
> Venireman Buntz: I don't believe so.
>
> Mr. Thompson: Render a fair and impartial verdict?
>
> Venireman Buntz: Uh-huh

Mr. Thompson: I move to strike Marilyn Buntz for cause.

Mr. Turner: I object.

The Court: I've got okay by her. Motion to strike Juror Buntz is overruled.

■ The Commission's objection was general and did not address the statute as a basis for her restriction, and failed to present this point in its motion for new trial. By its actions the Commission would appear to have waived even a plain error consideration of this point as appeal. *Cf. Kennedy v. Tallent*, 492 S.W.2d 33, 36 (Mo. App.1973) (where concealment or lack of knowledge of the relationship by the juror is dealt with).

■ If the Commission does not show on the record a violation of Section 494.190 the question of the appropriate standard of review becomes unnecessary. Juror Buntz, to be disqualified would have to be related by affinity in the fourth degree to a *party* to this suit. (This court assumes for the sake of argument Don Hall was the party here, even though it was admitted the property was held by Don Hall, Inc., a corporation, of which Hall owned 98% of the stock—Hall did appear in this case as a witness). Affinity is described in *State ex rel. inf. Roberts v. Buckley*, 533 S.W.2d 551 (Mo. banc 1976) at page 554, "... As a legal relationship which arises as the result of marriage ... between each spouse and the consanguinal relatives of the other. That is, the husband is related by affinity to his wife's relatives in the same way that she is related to them by blood, and she is related to his relatives by affinity in the same way that he is related to them by blood." *See also State v. Thomas*, 351 Mo. 804, 174 S.W.2d 337, 338 (1943) where the court said, "[A] kinship by affinity—arising through marriage—exists only between each spouse and the blood relatives of the other spouse." In other words for a kinship by affinity the person merely steps into the shoes of their spouse and the count begins as to the blood relatives of the spouse. In *State v. Hooper*, 140 Kan. 481, 37 P.2d 52 (1934) it was held at page 64:

"Marriage will relate the husband, by affinity, to the wife's blood relations, but will not relate the husband's brother to any of her relations. The husband of the juror's stepdaughter was not related to the juror, but only to the juror's wife. The husband's brother, the plaintiff, was further off still. He was not related even to the juror's wife."

*Thomas, supra,* gives, beginning 174 S.W.2d at page 340, the method under the civil law of determining the degrees of consanguinity in Missouri, where the court ascends from either of the two relatives to the common ancestor and then down, so that brothers would be related in the second degree and first cousins in the fourth degree.

In *Thomas* the court held where the juror's sister was married to a brother of the prosecutrix' husband, the juror's relationship was that of a brother-in-law of a brother-in-law to the prosecutrix, and therefore the statute was not violated.

■ The basic flaw in the Commission's point is that the only reference in the record as to Juror Buntz' kinship or relationship to Don Hall is susceptible to two interpretations, one of which would not come within the statutory definition. The mere statement "he's my sister-in-law's brother," could mean there were three siblings, one a male married to Buntz, one a female (Buntz's sister-in-law) and the third, Don Hall. This statement, without more, could also mean there were two brothers; Ms. Buntz married one, and the other brother's wife (her sister-in-law) had a brother, Hall. Under this second possibility the juror was not *blood* kin to Hall and under the language of *Thomas, supra,* at 338 was not related by affinity, the result no kinship at all. Since it was not shown whether her relationship was by blood or marriage, the point is denied.

■ The Commission's final point is the trial court erred in not granting its new trial motion because the verdict was against the weight of the evidence. The Commission does not here question the sufficiency of the evidence, a question of law. *Taylor*

v. *F.W. Woolworth Company,* 641 S.W.2d 108, 111 (Mo.banc 1982). It did not file a motion for directed verdict at the close of the evidence. The contention here on weight of the evidence is for the trial court's discretion and will not be disturbed on appeal absent abuse of that discretion. *Taylor, supra,* at 111; *Pratt v. Cudworth,* 637 S.W.2d 720, 723 (Mo.App.1982). There was no abuse in overruling the motion and the point is denied. What the Commission is really saying is the verdict was too high, and its evidence of $24,975 and $25,005 should have been accepted as the landowner's evidence of $123,500 was based on a potential use and/or sale of the land that was speculative too remote to be considered and to have been relied upon by the jury. Its cases in support of this conclusion, *Union Electric Co. of Missouri v. McNulty,* 344 S.W.2d 37 (Mo.1961) and primarily *State ex rel. State Highway Commission v. Steinlage,* 545 S.W.2d 326 (Mo.App.1976) do not help the Commission. The Hall's expert testified extensively on the time it would take to develop the land and his opinion as to value which was based in part on comparable sales stipulated to by the parties. No objection was made by the Commission to this testimony, nor motion made to strike the testimony of which it now complains, therefore this point is not preserved for appeal. In *Steinlage, supra,* the testimony of the expert was admitted over the objections, motions to strike and requests for mistrial appropriately made by the appellant. 545 S.W.2d at 329–30. The verdict here was within the range of evidence of damages and there being no trial court abuse of discretion in denying the motion for new trial this court will not weigh the evidence nor disturb the verdict. *Arkansas-Missouri Power Company v. Haines,* 592 S.W.2d 883, 885–86 (Mo.App.1980).

The judgment is affirmed.

