**STATE of Missouri, Respondent,**

v.

**John FRANCIS, Appellant.**

**No. KCD 28322, KCD 28324.**

Missouri Court of Appeals,
Kansas City District.

Nov. 29, 1976.

Application to Transfer Denied
March 14, 1977.

J. Arnot Hill, Hill & Gamm, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

The appellant (hereafter defendant) was charged in separate indictments with Murder First Degree and with Robbery First Degree, arising from the death by gunshot of Russell Mestdagh, a member of the Kansas City, Missouri police department, during the course of an armed robbery of Traxler's Pharmacy, 59th and Holmes, Kansas City, Missouri, on January 2, 1975.

The separate indictments were consolidated for trial by agreement of the defense and the state. A jury found the defendant guilty of Murder First Degree and assessed his penalty at life imprisonment. In a separate verdict, the jury found the defendant guilty of Robbery First Degree, but were unable to agree upon the punishment. After an unavailing motion for a new trial, the defendant was sentenced to life imprisonment on the murder charge, and a term of forty (40) years on the robbery charge, such sentences to run consecutively.

The defendant raises three assignments of error on this appeal. *First*, he asserts that the trial court erred in failing to provide the defendant with a panel of 47 prospective jurors, as required by Section 546.-180 RSMo 1969. *Second*, he charges that the trial court erred in overruling his motion for acquittal at the close of the evidence on the charge of murder in the first degree because the evidence did not establish that defendant shot and killed Officer Mestdagh. *Third*, he asserts that the court erred in failing to dismiss the entire jury panel upon motion by defendant following an incident during voir dire examination of the panel where the trial court, in an attempt to answer a prospective juror's question as to whether or not life imprisonment amounted to 15 years, advised the juror that anyone confined in the Missouri Department of Corrections might be paroled whenever the Department of Corrections concluded that it should be done.

Section 546.180 RSMo 1969, provides that in all cities having a population of over one hundred thousand inhabitants, a defendant indicted for a criminal offense shall be entitled to peremptory challenges of jurors, as follows:

"2. (1)(a) If the offense charged is punishable with death, or by imprisonment in the penitentiary not less than for life, to the number of twenty and no more;

\* \* \*"

The statute further provides:

"(2) In all such trials, the state shall be entitled to the following number of peremptory challenges:

(a) If the offense charged is punishable with death, or by imprisonment in the penitentiary not less than for life, to the number of fifteen, and no more; \* \* "

This statute, of course, was applicable to the jury selection proceedings in the trial of the defendant. However, the record shows that the original panel of prospective jurors called in the trial of defendant numbered 45, and six of these were excused for cause

during voir dire examination, leaving a venire panel for the exercise of peremptory challenges of 39. No additional persons were called (nor were such requested) to bring the panel to the number of 47, so that the defendant and the state could exercise the full statutory peremptory challenges afforded by Section 546.180.

From the remaining panel of 39, a jury of twelve and one alternate was selected to try the defendant. The record does not reveal how the peremptory challenges were allocated between the defendant and the state, but it is obvious that the defendant could not have been afforded his statutory peremptory challenge to 20 of the prospective jurors and therein rests his complaint in Point I of this appeal.

■ However, the defendant's trial counsel (not his counsel on this appeal) made no objection to the size of the original venire panel of 45; made no request initially or after it was reduced by excuses for cause to 39, that it be augmented by calling additional persons as prospective jurors; made no objection to any reduction of the number of peremptory challenges afforded him; made no objection as to the final jury because of the selection process employed; did not at any time move to quash the venire panel; and, did not raise this point in his motion for a new trial. His point as to the method employed in the selection of the trial jury is raised for the first time on this appeal, and thus comes too late.

Since the first year of the present century, the rule governing the situation here presented has been clearly stated and often iterated. In *State v. Bell*, 166 Mo. 106, 65 S.W. 736, 737 (1901), it was said:

"* * * The matter of failing to provide a complete general panel before calling on a party defendant to make his challenges is a matter of exception, pure and simple; and if such party fail to except at the proper time, and to properly preserve such his (sic) exception, any redress for him is out of reach of judicial interposition * * *"

In *State v. Nichols*, 165 S.W.2d 674, 675[7] (Mo.1942), it was held that a defendant's right to a statutory venire was a right which could be waived and that a failure to object to an inadequate venire until after a jury was sworn constituted such a waiver.

The problem presented is one of error and exception "pure and simple" and not of jurisdiction.

See also: *State v. Donnell*, 387 S.W.2d 508, 514[10, 11] (Mo.1965); *State v. Cox*, 392 S.W.2d 265–266[1] (Mo.1965); *State v. Thomas*, 433 S.W.2d 537, 540[5] (Mo.1968); *State v. Turnbough*, 498 S.W.2d 567, 570[1] (Mo.1973); and, *State v. Thomas*, 530 S.W.2d 265, 267 (Mo.App.1975).

The cases relied upon by defendant [*State v. Kinne*, 372 S.W.2d 62 (Mo.1963), and *State v. Williams*, 515 S.W.2d 544 (Mo. 1974)] are distinguishable in that in each the defendant lodged proper and timely objections to the lack of a statutory venire and, upon request, the courts refused to bring the venire up to the statutory number.

Defendant's first point on appeal is ruled against him.

At the close of the state's evidence, the defendant filed a Motion for Directed Verdict of Acquittal, which generally attacked the state's case as supported by insufficient evidence on both the charge of first degree felony-murder and the charge of robbery first degree. The trial court overruled this motion. The defendant then testified in his own behalf and rested.

The defendant's second point on this appeal, as above noted, is that the court erred in overruling his motion "for a judgment of acquittal *at the close of all the evidence*" (emphasis supplied) on the charge of murder in the first degree. The record of the trial before this court fails to reveal that such a motion was filed by the defendant or adversely ruled by the trial court. However, since the omission from the record may have been the result of a preparation mistake, and in view of the severity of the sentences and the fact that the state has joined issue in its brief on the assignment of error, it will be briefly considered.

Since this second point goes to the sufficiency of the evidence to support the murder charge, this court must review the evidence in its light most favorable to the state to support the conviction and all evidence and inferences to be drawn therefrom to the contrary must be disregarded. *State v. Stapleton,* 518 S.W.2d 292, 296[1] (Mo. banc 1975); *State v. Jones,* 524 S.W.2d 186, 187[1] (Mo.App.1975).

When so viewed, the evidence produced by the state presents facts from which the jury could reasonably find that the defendant and one Eugene Minor, and a third person, Kenneth Johnson, acting in concert and with a common purpose, robbed the proprietor of Traxler's Pharmacy by putting Traxler and some store customers in fear by means of at least one firearm on January 2, 1975, at about 3:00–3:30 p. m. The jury could further reasonably find from the evidence that the defendant and Minor had visited the location of the Traxler Pharmacy at 59th and Holmes, Kansas City, Jackson County, Missouri, on the forenoon of that day and had returned there just before the robbery in a blue van motor vehicle, apparently with Kenneth Johnson, which was parked beside the Traxler Pharmacy and in which van latent fingerprints of the defendant were later discovered; that Minor and the defendant entered the store and at gunpoint forced Traxler and a customer to lie on the floor;[1] and, the two black men thereupon looted the cash register and collected other drugs and sundries which were placed in a pillowcase. During the course of these activities, a young boy and a lady customer entered the store, and were also forced to lie on the floor.[2]

During the course of the robbery, the victim testified that the defendant shouted a warning that the police had arrived, and he and his companion ran to the storeroom at the back of the pharmacy.

Thomas M. Gaugh, a member of the Kansas City, Missouri police department, and his partner, Russell Mestdagh, were patrolling in an unmarked police car and received an alert that a robbery was in progress at Traxler's. Upon arrival at the store, they entered the front door but immediately Gaugh went to the outside back of the premises to prevent an escape from the back door, and Mestdagh proceeded to the back storeroom. Gaugh at the outside rear door (which he found locked from the inside) said he heard loud noises and commotion from the back of the building followed by three shots. Traxler and his customers within the store also heard this, and thereupon, the two black men emerged from the back room and left the store by the front entrance.

The defendant left the store first and was immediately apprehended by another arriving police officer and placed in a "frisk" position against the building. Minor then emerged from the store with a gun in hand and fled. The officer, holding the defendant in custody, thereupon started to pursue Minor on foot and overtook him and placed him in restraint. In the meantime, the defendant ran east on 59th Street to Rockhill Road, where he attempted to commandeer the vehicle of a passing motorist. During these attempts, however, he was placed under a citizen's arrest by one Cummins, also a passerby, who was employed by the Automobile Recovery Bureau. Cummins handcuffed the defendant and returned him to the scene of the robbery.

Residents of the neighborhood testified that during this period of excitement, the blue van previously parked beside Traxler's Pharmacy was driven away, presumably by the third member of the trio.

Officer Mestdagh was found in the rear storeroom of Traxler's Pharmacy with multiple gunshot wounds, from which he died that same afternoon. There was state's

---

1. The customer positively and unequivocally identified the defendant as one of the two robbers, both at a police lineup and in the trial, and Traxler did likewise as to Eugene Minor. The customer had opportunity and conditions during the robbery to make such identification, and stated that the defendant was carrying a handgun while she observed him in the store.

2. The young boy also positively identified the defendant as one of the robbers.

evidence that some of his wounds, and perhaps the fatal one, resulted from shots from his own service revolver, although this evidence is somewhat obscure.

While in custody of the police later that day and the following morning, the defendant gave many divergent oral accounts of his connection with this matter. Emerging therefrom, however, is the fact that he admitted his presence in the area of Traxler's Pharmacy at the time of the robbery, and his participation to various degrees in its perpetration. He denied, however, that he was armed and that he shot Officer Mestdagh. On the witness stand at trial, he denied any connection with the robbery, but stated that he had stopped at Traxler's to call his girl friend and became an innocent bystander in the events above summarized.

On this appeal, the thrust of his second point centers exclusively on the argument that he cannot be convicted of first degree felony-murder for the reason that the state's evidence "did not establish that defendant shot and killed the victim of the alleged murder."

■ It is true that there was no direct evidence that the defendant actually fired one or more of the shots that resulted in the death of Officer Mestdagh while he, the defendant, and Minor, were in the back storeroom at Traxler's Pharmacy, but such proof was not necessary to support the conviction once the fact of defendant's participation in the robbery was established.

Following earlier authorities, this principle is stated in *Dickson v. State,* 449 S.W.2d 576, 581[5] (Mo.1970):

"* * * 'The defendant's connection with the crime was through his association with the other men in the attempt to rob the bank, in which attempt the murder was committed. It was murder in the first degree if he was there with the others engaged in that enterprise' even though there was no proof of a conspiracy *or that he fired a shot.* * * * "
(Emphasis supplied)

See also: *State v. Paxton,* 453 S.W.2d 923, 925[2] (Mo.1970); *State v. Ford,* 495 S.W.2d 408, 416[10] (Mo. banc 1973); *Hayes v. State,* 501 S.W.2d 508, 512[12, 13] (Mo. App.1973); *State v. Williams,* 522 S.W.2d 327, 329[2] (Mo.App.1975); *State v. Johnson,* 524 S.W.2d 97, 99–100[4] (Mo. banc 1975).

There is no merit to defendant's second point.

The defendant's third and final point hinges on an incident which occurred during voir dire examination of the prospective jurors. The record reflects the following:

"MR. DAKOPOLOS: (Prosecutor) * * * Under the crime of Murder in the First Degree our State Legislature has provided that that crime shall be punished by life in prison. That's the only sentence that can be given by a jury on the crime of Murder in the First Degree, should the defendant be found guilty.

I would ask if any members of the jury panel have any reservations or argument or quarrel with this punishment as has been provided by the State Legislature?

JOSEPH L. STROBL: (Venireman— raising hand.)

MR. DAKOPOLOS: Yes, Mr. Strobl?

JOSEPH L. STROBL: What is considered life imprisonment? Fifteen years?

MR. DAKOPOLOS: Well, unfortunately I'm not permitted to interpret that and I don't think the court is either.

THE COURT: Well, not specifically. The law in Missouri however is, I think I probably can tell you this much, anyone being confined in the custody of the Missouri Department of Corrections may be paroled from custody whenever the Department of Corrections concludes that it should be done. It's up to them. Nobody else has any control over it.

MR. RODARTE: (Defense counsel) I have a comment to make to the Court whenever you are finished, Judge.

(COUNSEL APPROACHED THE BENCH AND THE FOLLOWING PROCEEDINGS WERE HAD:)

MR. RODARTE: Your Honor, at this time I'm going to move that you dismiss the entire panel for the reason that the inquiry that was made by Mr. Strobl was not responsive to the question submitted by the prosecuting attorney and that his question has influenced and prejudiced the entire panel in that by his commenting—or his question raised an issue that perhaps a life sentence would only carry a term of fifteen years.

THE COURT: Well, the fact of the matter is that's the truth.

MR. RODARTE: Well, Judge, I know that, but I don't think that this would influence—I think that this would influence this panel and the members that are selected from that in determining what sentence that they should give, not only on the Count of Murder but also on the other count.

THE COURT: Overruled.

(THE PROCEEDINGS RETURNED TO OPEN COURT.)

MR. DAKOPOLOS: Mr. Strobl, with the information you received, would that have any bearing on your ability to sit as a juror in this case?

MR. STROBL: What goes through my mind, counsel, at the present time is a man is convicted of armed robbery and he can get a bigger sentence and have to serve a bigger sentence than one for murder.

MR. DAKOPOLOS: Well, that may be true and I'll get into that in just a minute, but my question is right now, does the fact that Murder in the First Degree in Missouri carries a mandatory sentence of life imprisonment cause you any problem in sitting as a juror in this particular case?

JOSEPH L. STROBL: Yes, sir, it would for this one reason that while the judge can sentence a man to life imprisonment you say the pardon board can let him out in two years, and that's what you told me. Now, if I read you wrong let me know.

THE COURT: That's possible. It doesn't happen but it's possible.

JOSEPH L. STROBL: It's possible. There is always the possibility?

THE COURT: Oh, yes. Anything is possible, I suppose.

MR. DAKOPOLOS: Now, knowing that, and keeping in mind that I'm going to talk about robbery in just a minute, Robbery in the First Degree, knowing what has been discussed about Murder in the First Degree, does that pose any problem to you sitting as a juror in this particular case?

JOSEPH L. STROBL: No."

No further discussion of this subject appears during voir dire, no further objection to the panel or request for its discharge was made, and no request of the court to excuse Joseph L. Strobl for cause was made. He was not, however, selected as one of the twelve jurors to try the case, although it does not appear which party exercised a peremptory challenge resulting in his elimination from the jury.

The defendant's Motion for a New Trial included the following:

"3. That the Court erred in overruling defendant's motion for a mistrial and discharging the jury panel when a member of said panel gave unresponsive answers to inquires (sic) made by the prosecuting attorney and made statements that prejudiced the other members of the jury panel regarding the length of punishment for murder and robbery."

The defendant's brief couches this assignment of error in the following terms:

"III

The court erred in failing to dismiss the entire jury panel upon motion of the defendant after the court, in an attempt to answer a juror's question as to whether or not life imprisonment amounted to 15 years, advised the juror that anyone being confined in the Missouri Department of Corrections might be paroled whenever the Department of Corrections concluded that it should be done."

■ It is true, as the state contends, that the review of an alleged assignment of er-

ror in this court is limited to the objections made at trial and preserved at that level in a motion for a new trial. *State v. Jones,* 515 S.W.2d 504, 506[3] (Mo.1974); *State v. Lang,* 515 S.W.2d 507, 511[8] (Mo.1974); *State v. Davis,* 482 S.W.2d 486, 489[6] (Mo. 1972); *State v. Johnson,* 483 S.W.2d 65, 67, 68[5] (Mo.1972), and cases cited therein.

While the grounds for the objection and request for discharge of the venire panel, the reason stated in defendant's motion for a new trial and point three of his brief are couched in somewhat varying terminology, it is clear that the essence of his complaint throughout is that the above-quoted colloquy during the voir dire examination of venireman Strobl somehow prejudiced the defendant's right to a fair and impartial trial before the jury ultimately selected.

■ This court is not unmindful of those authorities that have held it to be improper for a prosecutor to argue to a jury the possibility of a prisoner parole in order to enhance a penalty, *State v. Kaempfer,* 342 Mo. 1007, 119 S.W.2d 294, 296[6] (1938); 23A C.J.S. Criminal Law § 1107, page 208; or for a trial judge to instruct a jury during its deliberations that a sentence imposed by its verdict may be shortened by means of parole, *State v. Cornett,* 381 S.W.2d 878, 881[2] (Mo. banc 1964), and cases cited therein. The parties do not cite, nor has independent research disclosed, any decision applying this rule to incidents such as the voir dire examination of venireman Strobl. Generally, it is the rule that a trial judge is vested with broad discretion in controlling voir dire, and his conduct and rulings will not be disturbed unless a clear, manifest and prejudicial abuse of that discretion appears. *State v. Yowell,* 513 S.W.2d 397, 403[4] (Mo. banc 1974); *Barnes v. Marshall,* 467 S.W.2d 70, 76[3] (Mo.1971). Further, a real probability of injury and prejudice to the complaining party must appear. *State v. Scott,* 515 S.W.2d 524, 527[1] (Mo.1974); *State v. Clark,* 509 S.W.2d 740, 742[1-3] (Mo.App.1974).

■ While it is not recommended that trial courts indulge in colloquies such as revealed in this record, during the voir dire of Mr. Strobl, the defendant has failed to carry his burden to establish that he was in any way injured or prejudiced thereby. The trial court here said nothing that would indicate any personal belief that the defendant was guilty; the state presented a strong, convincing case to support its charge of first degree murder against the defendant; and, the jury having found him guilty of that offense, had no choice under the applicable statute but to assess his punishment at imprisonment for life. That the voir dire incident did not prejudice the jury against the defendant in its consideration of the first degree robbery charge as to the assessment of punishment is apparent from the fact that it was unable to agree as to the punishment on such charge and left the assessment thereof to the trial judge.

The three authorities relied upon by defendant in support of this point are inapposite to the case here under review. In *State v. Castino,* 264 S.W.2d 372, 375[3] (Mo.1954), the court held it was reversible error for a trial court to advise a panel during voir dire that a person originally jointly charged with the defendant had pleaded guilty to the offense. In *State v. Martin,* 506 S.W.2d 473, 474[4] (Mo.App.1974), the trial court told the venire prior to voir dire that the defendant was charged under the Habitual Criminal Act. In *State v. Fenton,* 499 S.W.2d 813, 816[8] (Mo.App.1973), the prosecutor during opening statement advised the jury that defendant's accomplice had pleaded guilty to the charge. The defendant's third point is ruled against him.

The judgment is affirmed.

All concur.