**Harold SMITH and Velma Smith, Appellants,**

v.

**ASSOCIATED NATURAL GAS COMPANY, Larry Hamilton and Regina Hamilton, d/b/a Hamilton Plumbing, Heating and Air, John (Sonny) A. Weeks and Betty J. Weeks, d/b/a Weeks Apartments, Respondents, Brown Stove Work, Inc., Defendant.**

No. 22002.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 17, 1999.

Motion for Rehearing and/or Transfer Denied Dec. 9, 1999.

Application for Transfer Denied Jan. 25, 2000.

William H. McDonald & Dana A. Chamblee, Springfield, for Appellants.

Denis C. Burns, Atty., St. Louis, for Respondent Assoc. Nat. Gas. Co.

Jeffrey S. Maguire, Atty, Cape Girardeau, for Respondent Weeks.

Charles C. Hatley, Atty., New Madrid, for Respondent Hamilton.

BARNEY, Judge.

This is an appeal from a judgment entered by the Circuit Court of New Madrid County, Missouri, after a jury verdict in a wrongful death action brought by Harold Smith and Velma Smith ("Appellants") for the wrongful death of their son, Steven Smith ("Steven").

As a result of a natural gas fire/explosion in Steven's apartment, he received serious burns over most of his body. Steven died 10 days later. The apartment was located within an apartment complex owned by one of the Respondents, Sonny Weeks and Betty Weeks, d/b/a Weeks Apartments ("the Weeks"). The jury returned a verdict in favor of Appellants and against Respondents, Associated Natural Gas Company ("ANG"), Larry and Regina Hamilton, d/b/a Hamilton Plumbing, Heating & Air ("Hamilton Plumbing") and the Weeks. The jury determined that Appellants' damages were $250,000.00 and assessed fault against the parties as follows: Appellants' decedent, Steven 49%; ANG 33%; the Weeks 13% and Hamilton Plumbing 5%. The judgment of the circuit court reflected the jury's determination. Appellants now raise three points of trial court error, discussed below. We affirm.

All of the Weeks' apartments were served by natural gas supplied by and transported to the apartments' gas meters by ANG. In the year prior to the explosion, the Weeks, acting as their own general contractor, remodeled their apartments, including apartment no. 7, where the explosion took place. Most materials were purchased through Lilbourn Builders Supply, owned by the Weeks. New appliances were purchased for each apartment and each apartment contained three gas appliances: a water heater, furnace, and stove. The stoves were purchased through ANG and all appliances were located in the kitchen area of each apartment unit.[1] The Weeks hired Hamilton Plumbing for various tasks in remodeling of the apartments, including the installation of all the gas appliances in all apartments, including apartment no. 7.

During the course of trial, there were various statements attributed to Steven, made after the explosion, that he had smelled gas and that he either worked on the stove or looked at the stove and then went into a bedroom and lit a cigarette.

At trial, the State Fire Investigator, James L. Amann, determined that the explosion resulted from ignition of natural gas in or around the kitchen stove. Appellants' expert witness, Simon Tamny, opined that the stove and its piping were the source of the natural gas leak, which was ignited by one of five pilot lights in the kitchen area. ANG's expert, John Jacobus, testified that the explosion resulted from a short time massive gas leak. He opined that the flex connector connecting the stove to the gas line was disconnected at the time of the explosion. He testified that the lighting of a cigarette by Steven was the cause of the explosion.

## I.

Appellants' Point One reads as follows: The trial court erred in impermissibly restricting Appellants' right to voir dire in that Appellants were prohibited from questioning prospective jurors as to any possible biases and prejudices which prevented Appellants from empaneling a jury of twelve (12) fair and impartial jurors in violation of the constitutional right of every citizen to a trial by jury.

Prior to our review of the merits of Appellants' first point, we observe that "[v]oir dire provides an opportunity to expose prejudices or biases that would prevent prospective jurors from serving as fair and impartial jurors." *State ex rel. Missouri Hwy. and Transp. Comm'n v. Buys,* 909 S.W.2d 735, 737 (Mo.App.1995). "Broad discretion is afforded trial courts during voir dire inquiry." *Id.* "Appellate courts do not reverse trial courts rulings made during voir dire 'unless they clearly and manifestly indicate an abuse of such discretion.'" *Id* (quoting *Barnes v. Marshall,* 467 S.W.2d 70, 76 (Mo. banc 1971)).[2] Such trial court rulings are reversed only if a real probability of injury and prejudice to the complaining party has been shown. *State v. Francis,* 544 S.W.2d 306, 312 (Mo. App.1976).

In their argument, Appellants set out certain preliminary remarks made by the trial judge prior to voir dire, out of the hearing of the jury, which they contend unduly restricted their right to make informed and intelligent choices in utilizing their challenges for cause and their preemptive strikes. These remarks generally related to those types of personal questions the trial judge felt were inappropriate questions to be propounded to the venire panel. Additionally, the trial judge indicated that the petit jury was to be selected by noon of the day of trial.

1. ANG was a dealer for Brown Stove Work, Inc. ("Brown Stove"). Appellants settled their claims against Brown Stove prior to trial.

2. "An abuse of discretion is found when a ruling clearly violates the logic of the circumstances or is arbitrary or unreasonable." *Rust v. Hammons,* 929 S.W.2d 834, 837 (Mo. App.1996).

While the Supreme Court of Missouri has observed that "[t]he trial court's discretion in controlling the manner and extent of questioning on voir dire will be upheld absent abuse," *State v. Gray*, 887 S.W.2d 369, 382 (Mo. banc 1994), it is also clear that "[t]he party asserting abuse has the burden of demonstrating 'a real probability that he was thereby prejudiced.'" *Id.*(quoting *State v. Antwine*, 743 S.W.2d 51, 58 (Mo. banc 1987)); *see also Francis*, 544 S.W.2d at 312. Here, Appellants have not set out for our review those specific questions which they intended to pose to the venire panel and which the trial judge prevented them from propounding. Therefore, we are prevented from addressing any allegation of error arising from the trial court's failure to allow these purported questions to have been posed to the venire panel. "It is a fundamental rule that contentions not put before the trial court will not be considered by the appellate court; an appellate court will not convict a trial court of error on an issue which was not put before it to decide." *Strunk v. Hahn*, 797 S.W.2d 536, 549 (Mo.App.1990). Additionally, as a general rule an appellate court will not consider matters outside the record. *See Small v. Missouri State Hwy. and Transp. Comm'n*, 815 S.W.2d 495, 497 (Mo.App.1991). Furthermore, as a general rule a party may not "complain of alleged error in which, by his own conduct at trial, he joined or acquiesced." *Eyberg v. Shah*, 773 S.W.2d 887, 897 (Mo.App.1989).

Nevertheless, our gratuitous review of the record reveals that Appellants were considerably less restricted in voir dire examination than they contend in their brief. Appellants were allowed broad latitude in propounding questions to the venire panel, including questions regarding the following subjects: (1) willingness to award damages for wrongful death; (2) whether any juror had previously filed any lawsuit or had been a defendant in lawsuits; (3) marital status, number of children, employment, union membership and spouse's employment; (4) previous involvement in any wrongful death litigation; (5) knowledge of the incident involving Steven's death and whether any juror had formed preconceived notions about the incident; (6) juror employment by or financial interest in Respondents' insurers. Accordingly, we cannot say there has been an abuse of trial court discretion in the manner in which the trial court conducted voir dire. *See Buys*, 909 S.W.2d at 737–38. Point denied.

## II.

In their second point, Appellants asseverate that the trial court erred in overruling their motion for new trial on the basis of juror misconduct on the part of jurors Robbins and Blankenship. While not setting out the specifics of what acts they contend constitute juror misconduct, we glean from the argument portion of Appellants' brief that their complaint is based on juror Robbins' failure to answer a question posed to her during voir dire examination and juror Blankenship's failure to disclose a kinship relationship with the Weeks during her voir dire examination.

We address the contentions relating to juror Robbins first. During the course of voir dire the entire venire panel was asked the following question: "Have any of you either been a plaintiff or a defendant ... in a personal injury accident?" Six jurors responded to Appellants' counsel's question, but Juror Robbins did not. In the argument portion of their brief, Appellants then state that "Juror Robbins was, however, involved in a personal injury action in the late 1980[']s as a defendant." However, the only citation for this assertion is a reference to "L.F. 0384" which is merely a reference to paragraphs 11 and 12 of Appellants' motion for a new trial, and is unsupported either by affidavit or attached exhibits. Additionally, our review of Appellants' post-trial motions shows that Appellants presented no independent testimony supporting their allegations regarding juror Robbins. The record does not reveal

court records or other documents, jury questionnaires or similar evidence presented to the trial judge by way of proof that juror Robbins had been sued in a personal injury case. The Appellants have the duty to provide this Court with a full and complete record on appeal. *See Jones v. Wolff*, 887 S.W.2d 806, 809 (Mo.App.1994). An incomplete record forecloses appellate review because it does not contain "all of the record, proceedings, and evidence necessary to the determination of all questions presented." *Brancato v. Wholesale Tool Co., Inc.*, 950 S.W.2d 551, 554 (Mo. App.1997); *see* Rule 81.12(a), Missouri Court Rules (1999). "Without this necessary information, we cannot rule with any 'degree of confidence in the reasonableness, fairness, and accuracy of our final conclusion.' " *Id.*(quoting *Elbert v. Elbert*, 833 S.W.2d 884, 885 (Mo.App.1992)). Where exhibits are omitted from the transcript and are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant. *In re Marriage of Powell*, 948 S.W.2d 153, 160 (Mo.App.1997). Subpoint denied.

■ In their next sub-point, in the argument section to Point Two, Appellants assert juror misconduct on the part of juror Blankenship because she "failed to disclose on voir dire that she was related to the Weeks." While Appellants do not expressly set out the relationship, whether by consanguinity or affinity, we discern that Appellants are complaining that juror Blankenship was related within the fourth degree of affinity to the Weeks. *See* § 494.470.1.[3] In support of this contention Appellants point to the fact that juror Blankenship's daughter [Crystal] and the Weeks' daughter [Vicki Jo] married two

brothers. Crystal married Richard King and Vicki Jo married Jimmie King.[4] Appellants, therefore, argue that juror Blankenship's failure to disclose this relationship during voir dire severely impaired Appellants' ability to conduct an intelligent and meaningful examination of the prospective venire panel. We disagree. Juror Blankenship simply does not meet the statute's definition of "kin" under Section 494.470.1.

■ Affinity is defined as a legal relationship which arises as the result of marriage between each spouse and the consanguinal relatives of the other. *State ex inf. Roberts v. Buckley*, 533 S.W.2d 551, 554 (Mo. banc 1976)(quoting *State ex inf. Norman v. Ellis*, 325 Mo. 154, 162, 28 S.W.2d 363, 366 (1930)). That is, the husband is related by affinity to his wife's relatives in the same way that she is related to them by blood, and she is related to his relatives by affinity in the same way that he is related to them by blood. *Id.* However, " '[m]arriage will relate the husband, by affinity, to the wife's blood relations, but will not relate the *husband's brother* to any of her relations.' " *State ex rel. Missouri Hwy. and Transp. Comm'n v. Johnson*, 658 S.W.2d 900, 905 (Mo.App.1983)(quoting *State v. Hooper*, 140 Kan. 481, 37 P.2d 52, 64 (1934))(emphasis added). Therefore, while Vicki Jo (Weeks)'s husband, Jimmie King, is related to the Weeks by affinity, Jimmie King's brother, Richard King, was never related to the Weeks by affinity. *Id.* Consequently, there was no kinship relationship between juror Blankenship and the Weeks within the meaning of Section 494.470.1. Accordingly, there is no basis for the claim of juror misconduct. Sub-point denied. Point denied.

---

3. In pertinent part, Section 494.470.1 provides that:

   [N]o person who is kin to either party in a civil case or to the injured party, accused, or prosecuting or circuit attorney in a criminal case within the fourth degree of con-

sanguinity or affinity shall be sworn as a juror in the same cause.
Section 494.470.1, RSMo 1994.

4. The Weeks' daughter's marriage was of short duration. She divorced her husband prior to the trial.

### III.

Appellants' third point reads as follows:

The trial court erred in overruling Appellants' motion in limine and Appellants' withdrawal instructions allowing the statements made by decedent Steven Smith to reach the jury in that the statements were inadmissible hearsay and not excluded under the *res gestae* or spontaneous exclamation exceptions to the hearsay rule and were not admissible as declarations against interest.

We determine that this point has no merit. We first note that "[a]n in limine ruling is a 'preliminary expression of the court's opinion as to the admissibility of evidence' and is subject to change during the course of the trial." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 646 (Mo. banc 1997)(quoting *Brown v. Hamid*, 856 S.W.2d 51, 55 (Mo. banc 1993)). Therefore, "a complaint about a trial court's in limine ruling preserves nothing for appellate review." *Sullivan v. Spears*, 871 S.W.2d 75, 76 (Mo.App.1994); *see also Bushong v. Marathon Elec. Mfg. Corp.*, 719 S.W.2d 828, 840 (Mo.App.1986). "If the court rules in limine that certain evidence will be excluded, the proponent still must make an offer of proof." *Sullivan*, 871 S.W.2d at 76. "If the evidence is still excluded upon offer of proof, the proponent may predicate error on the exclusion." *Id.*

Secondly, we also observe that under MAI 34.01, "the use of withdrawal instructions is to avoid misleading the jury on a specious issue ... and the giving or refusal of these instructions is again up to the discretion of the judge." *Bradley v. Browning–Ferris Indus., Inc.*, 779 S.W.2d 760, 765 (Mo.App.1989) (citation omitted). Here, Appellants cannot be heard to complain about "statements attributed to decedent Steven Smith made after the explosion." This is because, as part of their apparent trial strategy in their opening statements and in their case in chief, Appellants' counsel expressly made reference to statements made by Steven to John Fourthman, an ambulance attendant relative to the circumstances surrounding the incident in question.

Appellants' counsel told the jury, in opening statements, *inter alia,* that:

Mr. Fourthman, who was an EMT, and who was with Steve, talked to Steve in the ambulance and asked him what happened. And the following report of what happened is, is in his, Mr. Fourthman's deposition. Steve said: 'I woke up, I smelled gas, I went to the kitchen. I either worked or looked at the range. I thought I had the problem fixed. I went back to the bedroom, I lit a cigarette, and the place exploded.' Now that's Mr. Fourthman's deposition testimony.

Additionally, not only did Appellants' counsel not object when this statement of Steven, as reported to John Fourthman, was admitted into evidence by way of the Fire Investigator's report, Appellants' counsel also affirmatively sought to introduce this evidence on his own accord. Furthermore, Appellants' counsel called Marta Sullivan as a witness. She was an EMT who rendered medical aid to Steven at the scene of the explosion. Marta Sullivan was asked about statements made to her by Steven and she responded that "he had kind of smelled gas and he had went into a bedroom and had lit a cigarette." At that point, Appellants' counsel moved for the introduction of the EMT report filed by Marta Sullivan, containing a similar admission by Steven as that made by Steven to John Fourthman. "A party waives a challenge to the admission of evidence where that party offers similar evidence." *Johnson v. Moore*, 931 S.W.2d 191, 195 (Mo. App.1996). In *Anderson v. Rojanasathit*, 714 S.W.2d 894 (Mo.App.1986), the court rejected plaintiffs-appellants' claim of trial court error by the trial court's denial of their motion in limine, which "forced a trial strategy" which caused them to elicit "un-

desirable information" during their direct examination. *Id.* at 895. In *Anderson,* the court observed that "[a] party may not complain about matters he brings before the jury," *Id.*, and held that by "eliciting direct testimony of [Mother's] cocaine use and [Father's] prior offenses, plaintiffs waived their right to challenge the admissibility of such testimony." *Id.* at 895–96; *see State v. Kelly,* 689 S.W.2d 639, 640 (Mo.App.1985). "A defendant may not take advantage of self-invited error...." *Kelly,* 689 S.W.2d at 640; *see also Peters v. Henshaw,* 640 S.W.2d 197, 201 (Mo.App. 1982). The trial court did not abuse its discretion in denying Appellant's withdrawal instruction. Point denied.

The judgment is affirmed.

GARRISON, C.J., PREWITT, J., concur.