**Opinion issued August 7, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00964-CV
_____

## J. DAVIS AUTOMOTIVE GROUP INC. D/B/A GULFGATE DODGE CHRYSLER JEEP, Appellant

## V.

## RONALD ARMITAGE, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF DEBORAH A. ARMITAGE, AND LACY BLANSHAN, Appellees

---

### On Appeal from the 333rd District Court
### Harris County, Texas
### Trial Court Case No. 2020-65445

---

### O P I N I O N

The Pandemic Liability Protection Act (PLPA) governs pandemic-related negligence claims. For claims that fall under the statute, the PLPA requires (among other things) that a claimant timely serve an expert report "that provides a factual

and scientific basis for the assertion that the defendant's failure to act caused the individual to contract a pandemic disease." TEX. CIV. PRAC. & REM. CODE § 148.003(a), (b)(1).

In this interlocutory appeal, Gulfgate challenges the trial court's December 6, 2023 order denying its motion to dismiss. *See id.* § 51.014(a)(16). Gulfgate argues the trial court erred in denying its motion to dismiss because appellees' amended expert report did not satisfy the causation requirement of the statute. *Id.* § 148.003(b)(1). We agree. We thus reverse.

## BACKGROUND

This lawsuit arises from the death of Deborah Armitage from COVID-19.[1] Ms. Armitage worked at Gulfgate, a car dealership in Harris County. Ms. Armitage contracted COVID-19 in June 2020, was hospitalized, and passed away on July 20, 2020.

In October 2020, Ms. Armitage's children (appellees in this case) sued Gulfgate for wrongful death, gross negligence, and other claims, alleging that Ms. Armitage's contraction of COVID-19 and ultimate death were caused by Gulfgate's failure to provide adequate protective measures against COVID-19.

---

[1] We assume without deciding that COVID-19 is a "pandemic disease" within the meaning of the PLPA. *See* TEX. CIV. PRAC. & REM. CODE §§ 74.155(a)(3), 148.001(1).

While this case was pending, the Texas legislature enacted the PLPA, which applied to any pending action filed after March 13, 2020. *See* Act of June 14, 2021, 87th Leg., R.S., ch. 528, § 5(a), 2021 Tex. Gen. Laws 1058, 1064. The PLPA requires, among other things, that claimants alleging pandemic-disease-related negligence claims timely serve an expert report on the defendant that meets specified requirements, including that the expert provide "a factual and scientific basis" for asserting that "the defendant's failure to act caused the individual to contract a pandemic disease." *See* TEX. CIV. PRAC. & REM. CODE § 148.003(a), (b)(1).

## A.    The First Expert Report

In appellees' initial report, Dr. Seth D. Feltheimer opined that "[w]hile I cannot say that [Ms. Armitage] definitively contracted Covid-19 while at work, it is clear to me that [Gulfgate] violated OSHA guidelines and did not provide her with a safe and healthy environment."[2]

Gulfgate filed an objection to the report, arguing that the report was deficient in showing that Gulfgate's actions were the cause of Ms. Armitage contracting COVID-19. Gulfgate emphasized that Dr. Feltheimer stated he could not conclude

---

[2]    Gulfgate argues that appellees did not timely serve their first expert report; Gulfgate offers this as a basis to reverse. Because we conclude that the amended report was inadequate, we do not need to reach this separate asserted ground for reversal or address whether it is even before us in this appeal.

that Ms. Armitage contracted COVID-19 at work. *See* TEX. CIV. PRAC. & REM. CODE § 148.003(d).

The trial court ultimately ordered appellees to serve a new report within 30 days, curing deficiencies. *See id.* § 148.003(e).

## B.    The Amended Report

Appellees served Dr. Feltheimer's amended expert report. In it, Dr. Feltheimer asserted that COVID-19 is easily transmissible: "droplets that contain the SARS-CoV-2 virus are released when someone with COVID-19 sneezes, coughs, or talks," and "can land on hands, objects, or surfaces around the person," or "can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs." "[T]ransmission can occur from those with mild symptoms or from those who do not feel ill."

Dr. Feltheimer opined that Gulfgate "failed to warn Ms. Armitage that she would be exposed to Covid-19, [as] another employee of Gulfgate had contracted the illness in March 2020." Additionally, Dr. Feltheimer opined that "Gulfgate did not fully comply with" several governmental guidelines, including failing to install plexiglass between employees, ordering limited masks for the dealership, and not instituting daily cleaning and disinfecting, among others.[3] Dr. Feltheimer opined

---

[3]    Dr. Feltheimer indicated he relied on Governor Greg Abbott's May 5, 2020 Executive Order GA-21; Harris County Judge Lina Hidalgo's March 24, 2020 "Stay Home Work Safe" Order; Harris County Public Health's April 27, 2020

4

that these failures "led more likely than not to her demise." The amended report concludes that "Ms. Armitage was at risk and contracted the Covid 19 virus, and more likely tha[n] not it was contacted at work."

## C.     Gulfgate moved to dismiss the amended report.

Gulfgate filed a motion to dismiss under section 148.003(f). Gulfgate argued that the amended report was defective because it failed to explain how or why any specific failure to act by Gulfgate *caused* Ms. Armitage to contract COVID-19, as required by the PLPA.

Initially, the trial court granted Gulfgate's motion and dismissed appellees' claims. But the trial court later granted appellees' motion for reconsideration and denied Gulfgate's motion. Gulfgate then filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(16).[4]

---

guidance; Texas Department of State Health Services' recommendations; and guidance from the Centers for Disease Control and Prevention.

[4]     Appellees argue now, for the first time, about the timing of Gulfgate's objections to their initial (not amended) expert report. *See* TEX. CIV. PRAC. & REM. CODE § 148.003(d). But, after the trial court determined appellees' first report was deficient and afforded them 30 days to file an amended report, *id.* § 148.003(e), Gulfgate timely filed its objections to the amended report that appellees served. *See Cornejo v. Hilgers*, 446 S.W.3d 113, 124 n.11 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also McQuillen v. Lubbock Heart Hosp., LLC*, 646 S.W.3d 336, 343–44 (Tex. App.—Amarillo 2022, pet. denied) (amended expert report superseded initial report, and defendant-hospital was required to file new objections to amended expert report within 21 days of the report being served). The trial court ruled on those timely objections, and that is the subject of this appeal. We reject appellees' argument.

## DISCUSSION

We agree with Gulfgate that appellees' amended expert report is deficient as to causation. We therefore reverse.

### A. The Pandemic Liability Protection Act

The PLPA governs pandemic-related negligence claims. The PLPA requires claimants seeking to hold an individual or corporation liable for "injury or death caused by exposing an individual to a pandemic disease during a pandemic emergency" to timely serve an expert report on the defendant. TEX. CIV. PRAC. & REM. CODE § 148.003(a), (b).[5]

Under the Act's plain terms, the claimant must serve on the defendant: "a report authored by at least one qualified expert that *provides a factual and scientific basis for the assertion that the defendant's failure to act caused the individual to contract a pandemic disease*." *Id.* § 148.003(b)(1) (emphasis added).[6]

---

[5] The term "person" used in the PLPA includes corporations. *See* TEX. CIV. PRAC. & REM. CODE § 1.002; TEX. GOV'T CODE § 311.005(2) (defining "person" to include a corporation); *see also Coming Attractions Bridal & Formal, Inc. v. Tex. Health Res.*, 595 S.W.3d 659, 662–63 (Tex. 2020).

[6] The PLPA does not define "factual," "scientific," or "basis." We interpret them according to their plain meaning. *See* TEX. CIV. PRAC. & REM. CODE § 1.002; TEX. GOV'T CODE § 311.011(a). "Factual" means "of or relating to facts" or "restricted to or based on fact." *Factual*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020). "Scientific" in turn means "of, relating to, or exhibiting the methods or principles of science." *Id.* (definition of "scientific"). "Basis" means, in part, "something on which something else is established or based." *Id.* (definition of "basis").

If a court determines that the report served "does not represent an objective, good faith effort to provide a factual and scientific basis for the assertion that the defendant's failure to act caused the injured individual to contract a pandemic disease, the court may grant the claimant, on one occasion, a 30-day period to cure any deficiency in the report," as happened here previously. *Id.* § 148.003(e). And if "a sufficient report is not timely served under this section, the court, on the defendant's motion, shall enter an order . . . dismissing the claim with respect to the defendant, with prejudice." *Id.* § 148.003(f)(1).

This appeal turns on the statute's causation language; the terms of this provision control.

We agree with our sister courts that the PLPA's expert report requirement is, in general, similar to the Texas Medical Liability Act's expert report requirement found in section 74.351 of the Civil Practice and Remedies Code. *See Gonzalez v. CS Auto, LTD*, 710 S.W.3d 903, 914 (Tex. App.—Corpus Christi–Edinburg 2025, no pet.); *Eden II Enters. v. Charlton*, No. 02-24-00079-CV, 2024 WL 2971692, at *4 (Tex. App.—Fort Worth June 13, 2024, no pet.). We apply the same abuse of discretion standard of review as we do when reviewing a trial court's ruling on a motion to dismiss challenging the adequacy of the expert report under section 74.351. *See Bush v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 714

7

S.W.3d 536, 544 (Tex. 2025). And we consider caselaw addressing section 74.351, to the extent its general guidance is relevant here.

**B.      The amended report fails to meet the statutory requirements.**

The PLPA requires that the report make an objective, good-faith effort to provide a "factual" and "scientific basis" for the allegation that the "defendant's failure to act caused the individual to contract a pandemic disease." TEX. CIV. PRAC. & REM. CODE § 148.003(b)(1), (e). The question here is whether the amended report satisfies this causation requirement.

Describing Chapter 74's causation element (which is similar—but notably does not include the "factual" and "scientific basis" requirement found in the PLPA[7]), the Texas Supreme Court stated that the expert must "explain 'how and why' the alleged negligence caused the injury in question." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018). "A conclusory statement of

---

[7]     *Compare* TEX. CIV. PRAC. & REM. CODE § 74.351(*l*) ("A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)," which in turn defines expert report as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed"), *with* TEX. CIV. PRAC. & REM. CODE § 148.003(b), (e)–(f) (requiring "an objective, good faith effort to provide a factual and scientific basis for the assertion that the defendant's failure to act caused the injured individual to contract a pandemic disease," and providing that "[i]f a sufficient report is not timely served," the court, upon motion, shall dismiss the case).

causation is inadequate; instead, the expert must explain the basis of his statements and link conclusions to specific facts." *Id.*; *see also Bush*, 714 S.W.3d at 544 (at this early stage, "the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes 'a good-faith effort to explain, factually, how proximate cause is going to be proven'" (quoting *Abshire*, 563 S.W.3d at 224)). Similarly, here, the question is whether the expert made an objective, good-faith effort to explain—in a nonconclusory fashion—a *factual* and *scientific* basis for the assertion that the defendant's failure to act *caused* the injured individual *to contract* COVID-19.

The Thirteenth Court of Appeals addressed allegations under the newly enacted PLPA in its recent *Gonzalez* case. Like here, *Gonzalez* involved a lawsuit filed by the estate of a car dealership employee who died after contracting COVID-19. 710 S.W.3d at 907–08. The report in that case opined there was "strong evidence" the decedent "contracted COVID-19 while employed" at the dealership, and it complained of alleged failures to act by the dealership. *Id.* at 908–11. But the *Gonzalez* court held that the report was deficient as to causation: The report did not show that the dealership's failure to act "actually *caused* [the decedent] to contract" COVID-19. *Id.* at 917 (emphasis in original).

*Gonzalez,* in turn, pointed to the Fifth Circuit's decision in *Johnson v. Tyson Foods, Inc.*, No. 22-10171, 2023 WL 2645553 (5th Cir. Mar. 27, 2023). That case

9

concerned negligence claims under the PLPA; plaintiffs asserted they contracted COVID-19 while working at a Tyson Foods plant, and the question was whether the claims could survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* at \*1–3. They could not.

As the Fifth Circuit explained (albeit in a different context), because "COVID-19 can and does spread at home, in schools, during sporting events, and everywhere else that people gather," the pleadings in a PLPA suit must include "facts which plausibly suggest that each plaintiff contracted COVID-19 *at the [defendant's] facility* as a result of [the defendant's] failures to warn, remediate, or implement government-promulgated protocols." *Id.* at \*3 (emphasis in original) (quoting *NFIB v. OSHA*, 595 U.S. 109, 118 (2022)). The court concluded that plaintiffs' allegations did "nothing to connect [defendant's] conduct to *Plaintiffs'* contraction of the virus," or "plausibly suggest that of the myriad places and ways" to contact COVID-19, "they contracted the virus at the [defendant's] plant as a result of [defendant's] negligence." *Id.* (emphasis in original). Plaintiffs did not, for example, allege that "they avoided exposure to the virus outside of work by mask-wearing, social distancing, or avoiding large gatherings," or that the defendant placed each plaintiff next to unmasked workers who had the virus or demonstrated symptoms. *Id.*; *see also Kim v. Ramos*, 632 S.W.3d 258, 261 n.5

(Tex. App.—Houston [1st Dist.] 2021, no pet.) (discussing COVID-19's highly contagious nature and easy transmissibility).

Here, Dr. Feltheimer's amended expert report is similarly deficient. It fails to satisfy the PLPA's report requirements on causation, requiring reversal. *See* TEX. CIV. PRAC. & REM. CODE § 148.003(b), (e)–(f); *see also Bush*, 714 S.W.3d at 543 (good faith standard is met if it includes all required elements in non-conclusory fashion).

As explained, under the PLPA, Dr. Feltheimer was required to provide, in a non-conclusory fashion, a factual and scientific basis for the assertion that Gulfgate's alleged failures *caused* Ms. Armitage to contract COVID-19. *See* TEX. CIV. PRAC. & REM. CODE § 148.003(b), (e); *Gonzalez*, 710 S.W.3d at 914, 917 (report had to explain how failure to act "was the 'cause-in-fact' of [the individual] contracting a pandemic disease, and that, 'but for' such specific failure by [the dealership], [the individual] would not have contracted the pandemic disease"); *see also Abshire*, 563 S.W.3d at 224 (expert must "explain 'how and why' the alleged negligence caused the injury in question"). He did not do so.

The amended report here explains that COVID-19 spreads easily, it asserts that COVID-19 was present at the dealership months earlier, and it lists many

11

actions it contends the dealership should have undertaken.[8] But it then leaps to the conclusion that it was more likely than not that Ms. Armitage contracted COVID-19 *at the dealership*.

The report does not explain how or why (factually, scientifically, or otherwise) it concludes that it was more likely than not that she contracted COVID-19 *at work*—especially given that the report's theory of transmissibility was that COVID-19 was easily transmissible. Why was she more likely to have contracted it at work than anywhere else? The report offers no information on Ms. Armitage's actions (outside the workplace, or inside it), such as mask-wearing, social distancing, or avoiding gatherings. It does not "adequately explain[] the links in the causal chain" from Gulfgate's alleged failures to act to Ms. Armitage actually contracting the readily transmissible COVID-19. *See Bush*, 714 S.W.3d at 546; TEX. CIV. PRAC. & REM. CODE § 148.003(b)(1).

Looking specifically, Dr. Feltheimer opined that Gulfgate "knew that employees tested positive for Covid 19 but did not move to minimize risk," and "failed to warn Ms. Armitage that she would be exposed to Covid-19, [as] another employee of Gulfgate had contracted the illness in March 2020." But Dr. Feltheimer does not explain how or why the asserted failure to warn that other

---

[8]     The amended report also states that Ms. Armitage was at a heightened risk for morbidity from COVID-19, once she contracted it. The statutory report requirement here focuses on the "contraction" of the disease, so we focus this opinion on the contraction of COVID-19.

employee(s) tested positive for COVID-19 months earlier (or to minimize risk) *caused* Ms. Armitage to contract COVID-19.[9]

Nor does he explain how or why the other alleged failures he asserts caused her to contract COVID-19 at the workplace. Again, Dr. Feltheimer says that "Gulfgate did not fully comply with" several government protocols, and he then concludes that these failures to protect Ms. Armitage "led more likely than not to her demise." But nowhere does Dr. Feltheimer explain how or why any of this caused Ms. Armitage to contract COVID-19 at her workplace, rather than through any "of the myriad places and ways" she may have contracted it. *See Johnson*, 2023 WL 2645553, at *3; *see also Kim*, 632 S.W.3d at 261 n.5 (COVID-19 is easily transmissible).

Under the PLPA, the expert report cannot just point out failures; it must also provide "a factual and scientific basis" for the assertion that these failures in fact "caused the individual to contract a pandemic disease." TEX. CIV. PRAC. & REM. CODE § 148.003(b)(1), (e), (f); *see also Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460–61 (Tex. 2017) (expert's "*ipse dixit* is

---

[9] Although appellees' original petition states Ms. Armitage contracted COVID-19 in June 2020, we note that, in his amended report, Dr. Feltheimer does not provide any "dates or specific timeframes of [Ms. Armitage's] exposure." *See Johnson*, 2023 WL 2645553, at *2–3 (without a date, it cannot be "determine[d] whether [the defendant] had an opportunity to remediate the [complained of] conditions or warn Plaintiffs before they encountered the virus, as well as what orders were in place at the time they suffered the disease").

insufficient"; report did not suffice because it lacked any factual explanation of "*how* [the hospital] permitted or facilitated [the patient's] transfer, or even whether [the hospital] had any say in the matter" (emphasis in original)); *Pankaj v. Hernandez*, 695 S.W.3d 900, 910, 918–19 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (expert's conclusion—that pediatrician caused infant's brain injury by failing "to order blood-gas testing or whole-body cooling" despite signs of hypoxia—did not suffice; expert did not explain "how or why blood-gas testing or whole-body cooling could have prevented or lessened severity" of infant's brain injury, nor did expert explain the role or purpose of these tests).

Dr. Feltheimer's amended expert report does not satisfy the PLPA's requirements. *See* TEX. CIV. PRAC. & REM. CODE § 148.003(b), (e)–(f); *see also Bush*, 714 S.W.3d at 543. Accordingly, the trial court abused its discretion in denying Gulfgate's motion to dismiss appellees' claims against it under TEX. CIV. PRAC. & REM. CODE § 148.003(f). We sustain Gulfgate's issue.

## CONCLUSION

We reverse the denial of Gulfgate's motion to dismiss and render judgment dismissing appellees' claims against Gulfgate. *See* TEX. CIV. PRAC. & REM. CODE § 148.003(f)(1). Because Gulfgate is statutorily entitled to an award of reasonable attorney's fees and court costs, we remand for a determination of the amount of this award. *See id.* § 148.003(f)(2).

Jennifer Caughey
Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.